THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
BERNARD KANEFSKY, Appellant.

First Department, November 2, 1978

### APPEARANCES OF COUNSEL

*Richard G. Handler* of counsel (*Reuss & Ruchala,* attorneys),
for appellant.

*James D. Veach* of counsel (*Robert M. Pitler* with him on
the brief; *Robert M. Morgenthau, District Attorney),* for re-
spondent.

## OPINION OF THE COURT

KUPFERMAN, J.

The defendant Kanefsky, having been indicted and charged with three counts of bribe receiving in the second degree (Penal Law, § 200.10) and one count of receiving unlawful gratuities (Penal Law, § 200.35), after a jury trial was convicted only of receiving unlawful gratuities and was sentenced to pay a $250 fine and to be imprisoned for an intermittent term of six months.

The defendant was a housing inspector and was convicted largely on the testimony of one Roberto who, having worked as an "expediter" for a contractor and having been caught in a bribe to an undercover police officer, agreed to co-operate in the investigation of large scale corruption in the department of buildings. We have heretofore affirmed convictions of others in a position similar to this defendant upon the testimony of the "expediter" (People v Lombardo, 56 AD2d 534, mot for lv to app den 41 NY2d 1014; People v Santoro, 56 AD2d 741, mot for lv to app den 41 NY2d 1016). We find that with respect to all of the issues raised by the defendant, except one, these previous determinations satisfactorily disposed of the questions, or the points raised are without merit.

After the conviction and in the course of another trial of a similar nature, it became apparent that the "expediter" kept a diary of his activities and payoffs during the year 1973. This defendant had called during his trial, by subpoena, for the production of numerous documents, among which was any "memoranda made by Peter Roberto and submitted to the Department of Investigation * * * dealing with alleged payoffs made by Peter Roberto to * * * employees of the City of New York, including Bernard Kanefsky, which payments are said to have been made prior to October 23, 1973." The commissioner of investigation produced these items, but did not include the diary in question.

Having learned of the diary during the course of the trial of another construction inspector, which diary did, incidentally, contain a reference to the construction inspector then on trial, the defendant moved to set aside his verdict for failure to produce the appointment book during his trial. The court denied the motion.

It is contended that the diary could not be probative since it ended well before January 23, 1974, the date of the only

transaction for which Kanefsky was convicted, and was turned over to the department of investigation on January 10, 1974. During argument on the question, the trial court stated: "You could very well argue, that diary could have had some probative value on the jury's consideration in terms of the overall credibility of Mr. Roberto with respect to the other counts and could have resulted in acquittal of the defendant in this count."

While it is contended that the diary made no reference to Kanefsky that might be construed as evidence favorable to him (*Brady v Maryland,* 373 US 83, 87; *People v Simmons,* 36 NY2d 126), it might still have been utilized to impeach Roberto's testimony on cross-examination. (See *People v Rosario,* 9 NY2d 286, cert den 368 US 866.) Failure to turn over possible *Brady* or *Rosario* material cannot be excused on the ground that the material would have been of limited use to the defense. *(People v Consolazio,* 40 NY2d 446, 454; *People v Malinsky,* 15 NY2d 86, 90.)

The judgment appealed from should be reversed, on the law, and the case remanded for a new trial.

LUPIANO, J. (dissenting). The only issue of some merit raised in this appeal relates to whether the trial court properly denied defendant's motion pursuant to CPL 330.30 (subd 1) for an order to set aside the verdict on the ground that the prosecution had failed to provide the defense with *Rosario* (9 NY2d 286, cert den 368 US 866) and *Brady* (373 US 83) material. One Peter Roberto subsequent to bribing an undercover police officer agreed to co-operate with the authorities in an investigation of corruption in the department of buildings. He was a key prosecution witness in the trial of defendant, a construction inspector for the department of buildings charged with three counts of bribe receiving in the second degree and one count of receiving unlawful gratuities in violation of sections 200.10 and 200.35 of the Penal Law. The jury, after deliberating two days, found the defendant guilty of the crime of receiving an unlawful gratuity on January 23, 1974, but was unable to agree on the other counts of the indictment. After the verdict the defendant made the motion alluded to above.

Defendant contends that his conviction must be reversed on the ground that a book kept by Roberto was not produced by the People during the trial in response to a subpoena duces tecum served on the department of investigation which book

allegedly contained exculpatory material and could be used to impeach the credibility of Roberto. This book relating to appointments was kept by Roberto from August, 1973 through December, 1973, and was turned over on January 10, 1974 to the department of investigation. Paragraph 32 of the subpoena called for the production of any "memoranda made by Peter Roberto and submitted to the Department of Investigation * * * dealing with alleged pay-offs made by Peter Roberto to * * * employees of the City of New York, including Bernard Kanefsky, which payments are said to have been made prior to October 23, 1973." On November 24, 1976, Commissioner Lupkin appeared before the trial court and produced the items requested including a list prepared by Mr. Roberto of the "Christmas present" recipients, nine reports from department of investigation deliveries which referred to Roberto and defendant, nine pages of Roberto's handwritten notes regarding his dealings with the buildings department, an accounting breakdown of all moneys paid by the department of investigation to Roberto, five pages of "recap" notes prepared by a department of investigation attorney and notes used to prepare transcripts of certain tapes. During the trial of another construction inspector *(People v Barbera)* the appointment book of Roberto which contained a reference to Barbera was produced. Defendant moved on January 31, 1977 to set aside his verdict for failure to produce the book during his trial.

It was alleged that Roberto had kept a diary in regard to his payoffs during a portion of the period covered by the indictment. It was also alleged that the diary was not given to the defense during the course of the trial. At a hearing on the motion, the trial court examined the book, determined that it had not been turned over, and denied the motion with the following pertinent observations: "the diary with respect to the count on which the defendant was in fact convicted had no materiality whatsoever because the diary had been turned over to the authorities prior to that date. You could very well argue, that diary could have had some probative value on the jury's consideration in terms of the overall credibility of Mr. Roberto with respect to the other counts and could have resulted in acquittal of the defendant in this count. I assume you would make that argument * * * Assuming you make that argument, the problem is that I don't think the fact that there are at best five persons whose names appear in this

diary is of any great significance to show in fact * * * that Mr. Kanefsky would be in the 82nd percentile of people *whose names were not mentioned* in the diary * * * (T)welve percent of the people that Mr. Roberto bribed in the year 1973 appear and approximately 88 percent do not which means that Mr. Kanefsky would be in the 88 percentile of people and I don't think that that has really any probative value whatsoever in terms of the overall picture in the case * * * (I)t is my * * * conclusion that the failure to turn over this diary is in fact of no significance whatsoever in the course of this trial". (Emphasis supplied.)

It is conceded that the book makes no reference to defendant Kanefsky which might be construed as "evidence favorable to an accused" *(Brady v Maryland,* 373 US 83, 87; see, also, *People v Simmons,* 36 NY2d 126). At the outset it must be noted that the book referred to is not in the strict sense a diary, that is a daily record of personal experiences or observations. It is, in substance and effect, a small appointment book setting forth the dates, times and places of certain appointments and in certain instances the name of the individual associated with the appointment. The nature and substance of the book thus seriously undermines any claim that it is of a unique aspect sufficient to constitute *Rosario* (9 NY2d 286, *supra)* or *Brady* material.

The critical issue is whether the book constitutes *Rosario* or *Brady* material. Study of the record and the book itself mandates the conclusion that the trial court properly found the appointment book not to be *Rosario* or *Brady* material. As the trial court pointed out, Roberto never testified that he noted every meeting with a construction inspector who was bribed or tipped. The book made *no* reference to defendant and indeed the largest number of names or entries had nothing to do with the investigation of the buildings department. Use of the "non-entries" in the appointment book to attack Roberto's credibility in light of the testimony at trial would have been patently duplicative and cumulative.

It is well to recall the common sense observation of Judge Froessel in *People v Rosario* (9 NY2d 286, 292): "In a criminal action, the People have the burden of overcoming the presumption of innocence which rightfully belongs to a defendant and proving his guilt beyond a reasonable doubt. The courts have no right to add to the People's burden the necessity of giving defense counsel ammunition in a game of

semantics. A defendant should of course be entitled to probe fully any contradictory matter, but ought not to be permitted to embark on a fishing expedition in the expectation of discovering subtle shades of meaning and immaterial variances in a prior statement of a witness, and skillfully playing on them before the jury. Such a practice would undoubtedly prolong trials and produce confusion, without in any way promoting the ends of justice."

Finally, the small appointment book, which is small enough to be carried in a shirt pocket and which I have inspected and which contains no references to defendant, does not appear with sufficient clarity to be within the terms of the subpoena which was served by defendant on the eve of trial. It is not a memorandum in the general definition of that term. Also, defendant already had the pertinent information which he specified, i.e., the names of the persons Roberto stated he had bribed.

In view of the aforesaid it is concluded that the judgment of the Supreme Court, New York County (GOODMAN, J.), rendered February 15, 1977, which convicted defendant after a jury trial of receiving unlawful gratuities (Penal Law, § 200.35) should be affirmed.

MURPHY, P. J., and YESAWICH, J., concur with KUPFERMAN, J.; LUPIANO and SULLIVAN, JJ., dissent in an opinion by LUPIANO, J.

Judgment, Supreme Court, New York County, rendered on February 15, 1977, reversed, on the law, and the case remanded for a new trial.