■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARMANDO GONZALEZ, Appellant.—Judgment, Supreme Court, Bronx County, rendered September 14, 1978, convicting defendant of the crimes of sodomy in the first degree (Penal Law, § 130.50, subd 1) and endangering the welfare of a child (Penal Law, § 260.10, subd 1) and sentencing him to an indeterminate term of imprisonment of from 10 to 20 years on the sodomy count, and a concurrent definite sentence of one year on the second count, modified, on the law and on the facts, to reverse the judgment of conviction of sodomy in the first degree, and dismiss that count of the indictment, and otherwise affirmed. The evidence clearly establishes that the defendant and the 14-year-old complainant engaged in an act of sodomy on July 30, 1977. Much less persuasive is the evidence with regard to "forcible compulsion," an essential element of the crime of sodomy in the first degree. After a careful review of the record, we are persuaded that the credible evidence did not establish "forcible compulsion" and that the defendant's conviction of sodomy in the first degree was accordingly "against the weight of the evidence." (CPL 470.15, subd 5; cf. *People v Yanik,* 63 AD2d 574; *People v Hughes,* 41 AD2d 333.) The objective circumstances strongly and uniformly indicate that the complaining witness consented to that which occurred. The incident occurred in the back seat of the defendant's car at a point to which the complaining witness had been driven in an apparent expedition to steal skateboards. The witness testified that he had voluntarily accompanied the defendant in his vehicle notwithstanding his claim that some two weeks earlier, on July 17, 1977, the defendant had forcibly sodomized him under similar circumstances, an event the witness had not previously disclosed to anyone. The defendant and the complaining witness were discovered by police officers in the back of the car pulling up their pants. The police observations provide no support whatever for the claim of force. The complaining witness exhibited no injuries and a search failed to discover a knife, although the witness said that the defendant had threatened to stab him. In short, a finding of forcible compulsion necessarily depends entirely on the uncorroborated statement of the complaining witness, who had a clear motive to lie since he was discovered in a compromising situation, whose testimony is inherently improbable, and whose varying statements disclose a pattern of significant contradiction with regard to the claim of

force. Significantly the witness wholly failed to allege any force in his testimony during the preliminary hearing although clearly encouraged to give such testimony by the examining District Attorney. Indeed, the witness acknowledged that he had considered himself free to leave the defendant's car. In an interview with a criminal court Assistant District Attorney prior to the preliminary hearing, the complaining witness stated with regard to the July 17 incident that, at the defendant's demand, he had anally sodomized the defendant after the defendant had sodomized him. The complaining witness never thereafter repeated this statement. Indeed, at the trial he flatly denied having sodomized the defendant and further denied having told the Assistant District Attorney what the latter had recorded in meticulously prepared contemporaneous notes. Moreover, the complaining witness' explanation of how he came to accompany the defendant on July 30, difficult to believe at best, was squarely contradicted by the testimony of another witness for the People, a friend of the complaining witness. The complaining witness testified that the defendant had persuaded him to go along by apologizing for the prior incident and assuring him that on this occasion they would in fact secure skateboards. His friend, concededly present at the time, testified to the contrary that the defendant had asked both the complaining witness and the friend whether either wished to accompany him and that the complaining witness had quickly volunteered. If we were not reversing on the finding that the verdict as to sodomy in the first degree was against the weight of the evidence and accordingly dismissing that count, we would have reversed that conviction and remanded for other reasons. Under the circumstances disclosed, it was error for the trial court not to have deferred the renewed cross-examination of the complaining witness until after the arrival of the Family Court records relating to his involvement in a robbery. The existence of the Family Court proceedings was belatedly disclosed by the complaining witness after completing his initial testimony for reasons that still further impair his credibility. As it developed, the Family Court records, received only after the jury verdict, significantly contradicted the testimony of the witness with regard to the gravity of the event and the degree of his culpability. Given the central importance in the trial of the credibility of this witness, it cannot be easily assumed that the defendant was not prejudiced by the failure of his counsel to have the records available during cross-examination. We think the defendant was further prejudiced by the failure of the prosecutor to make timely disclosure of the interview report prepared by the criminal court Assistant District Attorney. This disturbing omission required defense counsel to undertake his cross-examination of the principal witness without highly pertinent information to which he was entitled and necessitated a second cross-examination on a later day. In the usual case, this might well have been considered not to be prejudicial, but we are not prepared to so conclude under the facts here presented. The circumstances surrounding the District Attorney's omission require further comment. The notes in question had been prepared by the Assistant District Attorney in the criminal court after the preliminary hearing. The opening paragraph gave an assessment of the complaining witness and the final paragraph presented an evaluation of the case as a whole. However, the greater portion of the notes embraced a detailed, carefully prepared report of the District Attorney's interview of the complaining witness prior to the hearing, and the notes clearly so state. Nonetheless, the trial Assistant District Attorney, in possession of these notes at all relevant times, insisted that he had no material to which the defendant was entitled after the complaining witness testified and stead-

fastly adhered to that denial in response to repeated and pointed questions by both defense counsel and the trial court. Asked to inquire further as to the existence of such material, he later reported that his efforts had been unavailing. It was only on the following day, after defense counsel stated that he had seen the criminal court assistant making notes, and moved to dismiss the indictment for an alleged violation of the defendant's constitutional rights, that the District Attorney disclosed the existence of the interview notes. After examining them, the trial court promptly directed that they be given to defense counsel and further directed that the complaining witness be recalled for further cross-examination. The trial assistant explained that the author of the notes had described them as only an "impression" of the witness, and that, after consultation "with others" he had concluded that there was no obligation to turn them over to defense counsel. We do not doubt the sincerity of this explanation by the Assistant District Attorney. Nonetheless, it must be pointed out that the greater part of the notes, obviously a report of an interview with the complaining witness and explicitly so described, was clearly material required to be disclosed to counsel under *People v Consolazio* (40 NY2d 446). (See, also, *People v Rosario,* 9 NY2d 286.) This would have been true even if the notes had not attributed to the complaining witness a statement damaging to the credibility of the witness and important to the case. Accepting as we do that the trial assistant had concluded in good faith, albeit erroneously, that defense counsel was not entitled to the notes, we are troubled by the failure to appreciate that the issue should have been submitted to the Trial Judge so that he would have had an opportunity to evaluate it. We see no reason to disagree with the judgment of the able and experienced Trial Judge that what occurred here was the result of inexperience rather than intentional misconduct. Our concern here is to emphasize once again the importance we attach to the duty of Assistant District Attorneys scrupulously to discharge their obligations to make available to defense counsel material required to be disclosed under *People v Consolazio (supra),* as well as material required to be disclosed under *Brady v Maryland* (373 US 83), and to further underline their obligation to inform the trial court of the existence of material not believed by them to require disclosure but as to which there may exist any element of doubt. Concur—Birns, J. P., Sandler, Ross, Lynch and Carro, JJ.