OPINION OF THE COURT
Jasen, J.
Defendant Bernard Kanefsky was convicted, after a jury trial, of one count of receiving unlawful gratuities. (Penal Law, § 200.35.) After rendition of the verdict, defendant *164 moved, pursuant to CPL 330.30 (subd 1), to set aside such verdict, arguing, inter alia, that a small pocket appointment book kept by one Roberto, an individual co-operating with law enforcement officials, was improperly withheld from him and should have been produced in response to a subpoena duces tecum. The only significant issue presented to us is whether this claimed impropriety mandates reversal of defendant’s conviction.
The facts relevant to this appeal are as follows: On October 24, 1973, Peter Roberto paid an undercover police officer posing as a New York City building inspector $100 to obtain a certificate of occupancy for a building being renovated by his employer. Confronted with his participation in this illegal activity, Roberto agreed to act as a confidential agent for the New York City Department of Investigation in the latter’s attempt to ferret out corruption within the Department of Buildings. Roberto continued to act as an "expediter” for his contractor-employer and carried out his customary duties while participating in the investigation.
Roberto’s employer did a substantial amount of work in the Department of Buildings District Two, an area of southeastern Manhattan to which defendant was assigned as a building inspector. The four-count indictment alleges that defendant received bribes on November 8, 1973, December 7, 1973 and March 1, 1974, and also received an unlawful gratuity on January 23, 1974. After a trial at which evidence was adduced demonstrating defendant’s participation in the aforesaid acts, defendant was convicted only of receiving an unlawful gratuity.
Defendant’s conviction on this lone count rested primarily upon the testimony of Roberto, who was an undercover agent of the Department of Investigation throughout the period charged in the indictment. He recounted his meeting with defendant on January 23, 1974, in the fifth floor cafeteria at 10 Hanover Square, at which time they discussed building plans and past payments made by him to defendant. Roberto stated that he offered defendant a $20 "Christmas present” at this meeting which was, in fact, accepted.
Roberto’s testimony was buttressed by a tape recording of portions of his conversation with defendant. In addition, Detective William Paulos testified that Roberto was searched and issued $30 in recorded money before he met with defendant, *165 and that a search of Roberto immediately subsequent to this meeting uncovered only $10.
To aid in preparation of his defense, defendant served a subpoena duces tecum upon the Department of Investigation calling for the production of numerous documents. Paragraph 32 thereof requested "[a]ny memoranda made by Peter Roberto and submitted to the Department of Investigations of the City of New York * * * dealing with alleged payoffs made by Peter Roberto to various employees of the City of New York, including Bernard Kanefsky, which payments are said to have been made prior to October 23, 1973.” Commissioner Stanley Lupkin of the Department of Investigation appeared before the court on November 24, 1976, and produced, in accordance with the subpoena, the following materials: a copy of a nine-page memorandum submitted by Roberto on November 22, 1973, setting forth his dealings with members of the building department and other city officials; nine separate reports prepared by Department of Investigation detectives concerning their observations of Roberto’s contacts with defendant from November, 1973 through May, 1974; a list prepared by Roberto from the files of his employer entitled "Christmas Special”; five pages of "recap” notes prepared by one of the attorneys working on the investigation summarizing the evidence in defendant’s case; an accounting breakdown of moneys paid by the Department of Investigation to Roberto; and notes used to prepare transcripts of the tape recordings between Roberto and defendant. In addition, the People produced Roberto’s Grand Jury testimony, three pages of notes taken by the trial assistant during his interviews with Roberto, one page of Roberto’s personal notes, and the transcripts of the tape recordings introduced at trial which contained some notations made by Roberto.
After defendant’s conviction and in the course of another criminal proceeding of similar nature, it became apparent that Roberto kept a listing of some of his contacts in a pocket appointment book, characterized by defendant as a "diary”. Armed with this revelation, defendant moved to set aside the verdict for failure to produce the book.
At a hearing on the motion, the trial court made an independent examination of the book and found that it had not been turned over to defendant. The court denied the motion, observing that "the diary with respect to the count on which the defendant was in fact convicted had no materiality what *166 soever because the diary had been turned over to the authorities” before the commission of the crime of which defendant was convicted.
On appeal, a divided Appellate Division reversed, holding that "[fjailure to turn over possible * * * Rosario* material cannot be excused on the ground that the material would have been of limited use to the defense.” (64 AD2d, at p 403.) The People were granted leave to appeal to this court by a Justice of the Appellate Division. There should be a reversal.
At the outset, we would note that for purposes of our analysis, it is unnecessary to decide whether the diary is within the scope of the subpoena duces tecum, or whether it falls within the embrace of the rule articulated in People v Rosario (9 NY2d 286, supra), to wit: that a defendant in a criminal proceeding has the right to examine a prosecution witness’ prior statements, which relate to the witness’ testimony, for impeachment purposes. The issue for our resolution is not whether the appointment book should have been turned over to the defendant before or during trial, but, rather, whether this alleged failure requires reversal of defendant’s conviction. In light of the fact that defendant’s conviction is predicated upon a criminal transaction to which the diary has no bearing, we now hold that the failure to produce the diary did not require reversal.
It is conceded that the diary was turned over by Roberto to law enforcement officials on January 10, 1974, whereas the only crime defendant was convicted of committing occurred on January 24, 1974. Thus, it is readily apparent that the sparse notations contained in the diary prior to January 10, 1974, could have no bearing upon defendant’s conviction of illegal conduct on January 24, 1974. Even if this court were to order a new trial with respect to the lone count of receiving an unlawful gratuity, the production of the appointment book would not assist defendant, for its contents would be wholly irrelevant to the subject matter of the new trial. (Cf. People v Johnson, 47 NY2d 785.)
While not directly relevant to this issue, we cannot ignore the wealth of material which was produced by the prosecution and the Department of Investigation in accordance with the subpoena duces tecum. The description of such documents *167 contained in the record reveals that they included information which was expressed in greater detail and encompassed a wider scope than the meager entries embodied in Roberto’s pocket diary, which contained no reference to defendant and only a few of Roberto’s many contacts during the year 1973.
In sum, reversal was simply not required in light of the fact that the diary is irrelevant to the crime of which defendant was convicted.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to that court for determination of the facts. (CPL 470.40, subd 2, par [b]; 470.25, subd 2, par [d].)
Chief Judge Cooke and Judges Gabrielli and Meyer concur with Judge Jasen; Judges Jones, Wachtler and Fuchsberg dissent and vote to affirm for reasons stated in the opinion by Mr. Justice Theodore R. Kupferman at the Appellate Division (64 AD2d 401).
Order reversed and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.

 (People v Rosario, 9 NY2d 286, mot for rearg den 9 NY2d 908, cert den 368 US 866, mot for rearg den 14 NY2d 876, mot for rearg den 15 NY2d 765.)