Maurice MAYO, Petitioner–Appellee,

v.

Robert J. HENDERSON, Superintendent, Respondent–Appellant,

Robert Abrams, Attorney General of the State of New York, Respondent.

No. 566, Docket 93–2446.

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1993.

Decided Jan. 3, 1994.

David A. Lewis, New York City (Legal Aid Society, Federal Defender Services Unit, on brief), for petitioner-appellee.

David J. Mudd, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., New York County, Marc Frazier Scholl, Asst. Dist. Atty., on brief), for respondent-appellant.

Before: OAKES, KEARSE, and ALTIMARI, Circuit Judges.

KEARSE, Circuit Judge:

Respondent Robert J. Henderson, Superintendent of New York State's Auburn Correctional Facility (the "State") appeals from a final judgment of the United States District Court for the Southern District of New York, Lawrence M. McKenna, *Judge*, granting the petition of Maurice Mayo, a New York State prisoner, for a writ of habeas corpus on the ground that he was denied his constitutional right to effective assistance of counsel when his state appellate attorney failed to raise an issue that the New York Court of Appeals, when the issue was raised on appeal by Mayo's codefendant, called a *per se* ground for reversal. For the reasons stated below, we affirm.

## I. BACKGROUND

In 1981, Mayo and his codefendant John Buster were convicted in New York state court on one count of robbery in the first degree and two counts of robbery in the second degree. The events leading to conviction were described at the state trial as follows.

In the early morning hours of September 20, 1980, Columbia University student Aquilino Benitez returned to his apartment building and in the lobby encountered two men, whom he later identified as Mayo and Buster, waiting for the elevator. All three entered the elevator. When they reached the sixth floor, Mayo turned to Benitez, pulled out what appeared to be a .22-caliber revolver, and told Benitez to hand over his money and jewelry. Buster pulled out a black folding knife with a panther on its handle and demanded Benitez's wallet. Benitez handed Mayo and Buster about $100 in cash as well as his jewelry, which included a silver ring inscribed with his nickname, "Tuto."

Eight days later, Mayo and Buster were arrested in connection with an investigation of a series of robberies. When arrested, Mayo was carrying a .22-caliber starter's pistol and was wearing a silver ring with "Tuto" engraved on it. When Buster was arrested, he had in his possession a black pocket knife with a panther on the handle. Each man also had receipts for sales of jewelry.

### A. The State Court Proceedings

At trial, Benitez identified Mayo and Buster and testified that he had also identified them in separate pre-trial line-ups. The gun and ring seized from Mayo and the knife seized from Buster were introduced into evidence, and Benitez identified those objects as well.

The defense theory was that Benitez had misidentified the defendants. Buster's attorney called two police officers and elicited that the reports they had filed following their interviews of Benitez immediately after the incident ("incident reports") contained descriptions of the robbers that differed in important ways from the physical appearances of the defendants. The prosecutor, however, in her cross-examination of the two officers, introduced memo books, which had not previously been furnished to the defense, containing the officers' original notes of Benitez's statements. The notes revealed that the discrepancies identified by defense counsel were simply errors that had occurred in the officers' transcription of their notes of Benitez's statements from the memo books to the incident reports. Benitez's in-court identifications were therefore consistent with the officers' notes as to his initial descriptions of the robbers.

Both defendants immediately moved for a mistrial on the ground that the prosecutor's failure to turn these memo books over to

them prior to trial was a violation of the rule of disclosure formulated in *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881, *cert. denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961), and later codified in the New York Criminal Procedure Law. Under that rule, the prosecutor has an obligation, prior to trial, to "make available to the defendant ... [a]ny written or recorded statement ... made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony." N.Y.Crim.Pro.L. § 240.45(1)(a). Buster's counsel also reminded the court that he had expressly asked the prosecutor, in the court's presence, to produce any documents such as the memo books and had stated that the defense did not want to be "sandbagged." The prosecutor admitted that she knew of the existence of the documents but had not given them to counsel.

The trial court called the prosecutor's failure to turn over the memo books "inexcusable" and "shocking" but denied the mistrial motions. The court gave a limiting instruction, telling the jury to disregard the officers' testimony concerning the memo books.

The jury convicted Mayo and Buster of the charges against them. Mayo was sentenced to serve 10–20 years in prison.

Mayo and Buster filed separate appeals, and Mayo's appeal was perfected first. In his brief to the Appellate Division, First Department, Mayo's appellate counsel detailed the course of the trial, including the events surrounding the *Rosario* violation and the trial court's denial of the mistrial motions, and he raised a number of issues, asserting several evidentiary and other trial errors. However, he did not mention the *Rosario* violation as a ground for reversal. Mayo's conviction was affirmed by the First Department without opinion, *see People v. Mayo,* 100 A.D.2d 983, 474 N.Y.S.2d 157 (1st Dep't 1984), and leave to appeal to the New York Court of Appeals was denied, *see People v. Mayo,* 62 N.Y.2d 808, 477 N.Y.S.2d 1033, 465 N.E.2d 1276 (1984).

Following the affirmance of Mayo's conviction, Buster perfected his appeal and raised the *Rosario* issue as a ground for reversal. The Appellate Division affirmed Buster's conviction without opinion. *See People v. Buster,* 110 A.D.2d 1093, 488 N.Y.S.2d 942 (1st Dep't 1985). Leave to appeal to the Court of Appeals, however, was granted, and that court reversed Buster's conviction *sub nom. People v. Ranghelle,* 69 N.Y.2d 56, 511 N.Y.S.2d 580, 503 N.E.2d 1011 (1986). The Court of Appeals held that a *Rosario* violation like this one, in which the prosecutor had failed to deliver *Rosario* material prior to trial, constitutes "per se error requiring that the conviction be reversed and a new trial ordered." *People v. Ranghelle,* 69 N.Y.2d at 63, 511 N.Y.S.2d at 585, 503 N.E.2d at 1016.

When Buster's conviction was vacated, Mayo promptly sought reconsideration of his own application for discretionary review in the Court of Appeals; his motion was denied. *See People v. Mayo,* 69 N.Y.2d 883, 515 N.Y.S.2d 1031, 507 N.E.2d 1101 (1987). He then filed a petition for a writ of error *coram nobis* in the Appellate Division, claiming that he had been denied the effective assistance of counsel. That petition, too, was denied, *see People v. Mayo,* 134 A.D.2d 205, 520 N.Y.S.2d 721 (1st Dep't 1987), and leave to appeal that denial to the Court of Appeals was refused on the ground that the Appellate Division's *coram nobis* decision was not appealable, *see People v. Mayo,* 70 N.Y.2d 957, 525 N.Y.S.2d 841, 520 N.E.2d 559 (1988).

## B. *The Present Habeas Proceeding*

In June 1988, proceeding *pro se,* Mayo filed the present petition in the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). As amended, the petition raised all of the grounds asserted in Mayo's original state appeal and added the claim of ineffective assistance of appellate counsel. The State opposed the petition. Pointing out that the Appellate Division had rejected the *Rosario* argument when it was made by Buster, the State argued that the failure of Mayo's attorney to raise that argument could not be viewed as unreasonable.

The petition was referred to Magistrate Judge Leonard Bernikow, who, in a Report and Recommendation dated October 16, 1990 ("1990 Report"), recommended that all of the

claims except ineffectiveness of appellate counsel be dismissed, that an attorney be appointed to represent Mayo in the present proceeding, and that an evidentiary hearing be held as to the reasons for Mayo's state appellate counsel's not raising the *Rosario* issue and as to the practice of the New York defense bar with respect to such claims. The district court accepted the magistrate judge's recommendation.

At the hearing before the magistrate judge, the parties stipulated that Mayo's appellate attorney did not remember why he had not raised the *Rosario* issue; indeed, he did not even remember preparing Mayo's brief. Mayo introduced the expert testimony of Stanley Neustadter, a professor of appellate advocacy at Cardozo Law School and Brooklyn Law School, and a former deputy chief and director of training at the Legal Aid Society's Criminal Appeals Bureau. Neustadter gave his opinion that, despite any uncertainty as to whether a *Rosario* violation constituted a *per se* ground for reversal or instead was subject to harmless error analysis, Mayo's state appellate counsel should have raised the *Rosario* claim on the appeal. Neustadter testified that the trial court's error was unmistakable and had been properly preserved. Moreover, because the memo books had "obliterated" the defense and "embarrassed" defense counsel, the *Rosario* error had clearly been prejudicial to the defendant's case. Neustadter testified that appellate counsel's failure to raise the *Rosario* claim was especially egregious in light of the weak nature of the claims he did raise. He concluded that there was "no reasonable ground" for not raising the *Rosario* issue.

In opposition, the State introduced the testimony of Assistant District Attorney Mark Dwyer, Chief of the Appeals Bureau of the New York County District Attorney's Office. Dwyer gave his opinion that it was unclear prior to 1985 whether or not harmless error analysis applied to *Rosario* violations. Dwyer testified that a reasonable attorney might well have concluded that, because the "undisclosed document was totally insignificant" (Hearing Transcript, May 28, 1992 ("Tr."), 60) and because of the uncertainty concerning the proper standard for review of

*Rosario* errors, there was little to be gained by raising the issue on appeal.

In a Report and Recommendation dated March 31, 1993 (the "1993 Report"), Magistrate Judge Bernikow concluded that the performance of Mayo's appellate counsel had been constitutionally deficient, and he recommended that the petition be granted. The magistrate judge concluded that Mayo met the test for ineffectiveness articulated in *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), finding that appellate counsel's performance had been below an objective standard of reasonableness, 1993 Report at 14, and that, in view of the reversal of Mayo's codefendant's conviction by the Court of Appeals, "a reasonable probability exists that petitioner's *Rosario* claim would have succeeded but for counsel's alleged error," 1993 Report at 8. The magistrate judge termed the question of the competence of counsel's performance "a close one," 1993 Report at 9, noting that although the Appellate Division had applied harmless error analysis to *Rosario* violations in cases after Mayo's appeal had been filed, "the Court of Appeals had indicated that *Rosario* violations constituted per se error," 1993 Report at 11. He noted that appellate counsel had been demonstrably aware of the *Rosario* violation but had chosen instead to "concentrate[ ] on questions of dubious legal validity." 1993 Report at 15. The magistrate judge concluded that counsel should not have ignored the *Rosario* violation as a ground for reversal and that his "questionable choice of issues supports the conclusion that his assistance cannot withstand constitutional scrutiny." 1993 Report at 16.

In a Memorandum and Order dated June 14, 1993, Judge McKenna, overruling the State's objections, agreed with the 1993 Report except for a portion of the recommended remedy. Accordingly, the court ordered that the writ be granted unless the State afforded Mayo an opportunity to present his appeal to the appropriate New York State court within 90 days for consideration of the *Rosario* issue as if it were properly and timely presented, or in the alternative, within 90 days gave Mayo a new trial. This appeal followed.

## II. DISCUSSION

On appeal, the State contends that the judgment should be reversed on the grounds (1) that the performance of Mayo's appellate counsel was not deficient in light of (a) the lack of clarity in the law at the time of Mayo's appeal, and (b) the lack of a uniform practice by defense attorneys to raise *Rosario* issues in similar cases; and (2) that the failure to raise the issue did not prejudice Mayo. We reject these contentions.

■ In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (*"Strickland"*), a habeas petitioner must satisfy a two-part test. First, he must show that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064, and second, he must show that there is a "reasonable probability" that but for counsel's error, the outcome would have been different, *id.* at 694, 104 S.Ct. at 2068. Although the *Strickland* test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel. *See, e.g., Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992) (*"Claudio"*), *cert. denied*, —— U.S. ——, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993); *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990).

■ In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. *See Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983). However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. As the Seventh Circuit has held:

> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985). *See, also, Fagan v. Washington*, 942 F.2d 1155, 1157 (7th Cir.1991) ("His lawyer failed to raise either claim, instead raising weaker claims.... No tactical reason—no reason other than oversight or incompetence—has been or can be assigned for the lawyer's failure to raise the only substantial claims that [defendant] had."); *Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (ineffective assistance of counsel when appellate counsel ignored "a substantial, meritorious Fifth Amendment issue" raising instead a "weak issue"). The claim whose omission forms the basis of an ineffective assistance claim may be either a federal-law or a state-law claim, so long as the "failure to raise the state ... claim fell 'outside the wide range of professionally competent assistance.'" *Claudio*, 982 F.2d at 805 (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066).

■ In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, "viewed as of the time of counsel's conduct," *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, and may not use hindsight to second-guess his strategy choices, *see Lockhart v. Fretwell*, —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (*"Fretwell"*). Counsel is not required to forecast changes in the governing law. *See, e.g., Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir.1990) (ineffectiveness not established by claim that "counsel should have realized that the Supreme Court was planning a significant change in the existing law, and that the failure to anticipate this change rises to the level of constitutional ineffectiveness"). However, the attorney's omission of a meritorious claim cannot be excused simply because an intermediate ap-

pellate court would have rejected it. In *Claudio,* we ruled that "[n]o reasonably competent attorney should have missed" the omitted claim, "even though the Appellate Division ultimately rejected it." 982 F.2d at 805; *see also Orazio v. Dugger,* 876 F.2d 1508, 1513–14 (11th Cir.1989) (counsel's failure to raise claim on appeal constituted ineffective assistance despite the fact that three Florida appellate court decisions had rejected the precise claim at issue).

■ In evaluating the prejudice component of the *Strickland* test, a court must determine whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The outcome determination, unlike the performance determination, may be made with the benefit of hindsight. *See Fretwell,* —— U.S. at ——, 113 S.Ct. at 844.

To establish prejudice in the appellate context, a petitioner must demonstrate that "there was a 'reasonable probability' that [his] claim would have been successful before the [state's highest court]." *Claudio,* 982 F.2d at 803 (footnote omitted). We have ruled that the fact that the omitted claim involved a right that had not yet explicitly been recognized by the state's highest court does not preclude such a finding. *See Claudio,* 982 F.2d at 803–05 (finding prejudice in counsel's failure to raise a state-law claim for ineffective assistance of counsel despite the fact that the New York Court of Appeals had not held that there was any state constitutional right to effective assistance of counsel). Where the highest court's eventual ruling was easily predictable, we have held that even an adverse ruling by the intermediate appellate court on the very claim at issue did not preclude a finding that there was a reasonable probability that the claim would have succeeded in the state's highest court. *See Claudio,* 982 F.2d at 803.

With these principles in mind, we turn to the present appeal.

### A. *Counsel's Performance in Not Arguing the* Rosario *Violation*

■ We agree with the district court that Mayo's state appellate counsel's failure to argue the *Rosario* issue was below the standards of reasonably competent performance, for the claims he raised were extremely weak, while the *Rosario* claim was particularly strong. Despite the State's contention that it was not clear prior to 1985 that a *Rosario* violation was to be considered a *per se* ground for reversal, the pronouncements from the Court of Appeals prior to October 1983, when Mayo's appellate counsel filed his brief, indicated that that court would apply a *per se* reversal rule to *Rosario* violations.

Under the *Rosario* rule, the prosecutor is required to make available to the defendant prior to trial "[a]ny written or recorded statement ... made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony." N.Y.Crim. Pro.L. § 240.45(1)(a). It is not error to fail to turn over documents that are nothing more than duplicative equivalents of statements previously turned over to the defense, *see People v. Consolazio,* 40 N.Y.2d 446, 454, 387 N.Y.S.2d 62, 66, 354 N.E.2d 801, 805–06 (1976) ("*Consolazio* "), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977); *People v. Payne,* 52 N.Y.2d 743, 745, 436 N.Y.S.2d 271, 271, 417 N.E.2d 564, 565 (1980) (mem.), or that are irrelevant, *People v. Kanefsky,* 50 N.Y.2d 162, 167, 428 N.Y.S.2d 453, 455, 405 N.E.2d 1019, 1021 (1980). But the prosecutor is not entitled to withhold material on the ground that it would have been of little or no use to the defense or that a witness's prior statements were entirely consistent with his testimony at trial. *People v. Consolazio,* 40 N.Y.2d at 454, 387 N.Y.S.2d at 66, 354 N.E.2d at 805–06.

The Court of Appeals first addressed the matter of whether a *Rosario* violation could be harmless error in 1976. In *Consolazio,* after noting that a failure to turn over *Rosario* material could not be excused on the basis that the material would not have aided the defense, the court stated, "We thus reject arguments that consideration of the significance of the content or substance of a wit-

ness' prior statements can result in a finding of harmless error." *Consolazio,* 40 N.Y.2d at 454, 387 N.Y.S.2d at 66, 354 N.E.2d at 805. The court expressly "distinguished ... pre-*Rosario* convictions as to which this court applied a harmless error analysis where violations of the *Rosario* rule were found." *Id.* n. *. *See also In re Kelvin D.,* 40 N.Y.2d 895, 896, 389 N.Y.S.2d 350, 351, 357 N.E.2d 1005, 1006 (1976) (mem.) (reversing for *Rosario* violation, stating that "[t]he fact that the defense counsel examined the documents during the course of the investigating officer's testimony does not suffice to overcome the erroneous refusal to provide defense counsel with copies for use during the examination of the witnesses who gave the prior statements to the initial officers on the scene.").

Though the *Consolazio* statements were dicta in light of the holding that the material at issue there was not required to be turned over, those statements indicated that New York's highest court would not apply harmless-error analysis in review of *Rosario* violations. Plainly, that court so interpreted them, for in *People v. Mattiace Industries, Inc.,* 52 N.Y.2d 739, 436 N.Y.S.2d 269, 417 N.E.2d 563 (1980) (mem.), the court cited *Consolazio* for the proposition that a *Rosario* violation could not be considered harmless. After rejecting other arguments, the court stated:

> Reversal is mandated, however, because counsel for the defense was entitled to the prior statements made by the witnesses for the purpose of impeachment. The denial of this request was improper (*People v. Rosario* ...). This error cannot be deemed harmless (*People v. Consolazio* ...).

*People v. Mattiace Industries, Inc.,* 52 N.Y.2d at 741, 436 N.Y.S.2d at 270, 417 N.E.2d at 564. *See also People v. Jackson,* 78 N.Y.2d 638, 640–41, 578 N.Y.S.2d 483, 485, 585 N.E.2d 795, 797 (1991) ("In *People v. Consolazio* ..., we first held that harmless error analysis was inappropriate when a defendant challenged the prosecution's failure to turn over *Rosario* material."). Although in *Jackson* the Court of Appeals held that the *per se* error rule for *Rosario* violations

was inapplicable to collateral review pursuant to CPL 440.10, the court has not deviated from the principle that on direct review of such violations, the *per se* error rule applies and harmless-error analysis does not.

When Mayo's appeal was filed, *Mattiace,* citing *Consolazio* and stating that the *Rosario* "error cannot be deemed harmless," was the Court of Appeals' most recent published statement dealing with *Rosario* violations. It is difficult, in light of the statements in *Consolazio* and *Mattiace,* to see how counsel's failure to argue the *Rosario* violation, which was properly preserved at trial, explicitly acknowledged and criticized by the trial court, and unexplained by the prosecutor, could be considered competent performance.

The State argues that counsel's failure to raise the *Rosario* claim can nonetheless be justified because a *per se* rule of reversal for such violations had not been adopted by the Appellate Division. We see several flaws in this argument. First, it was not entirely clear what standard the First Department applied to *Rosario* issues. Although that court appeared to eschew a *per se* rule in *People v. Gonzalez,* 74 A.D.2d 763, 764, 425 N.Y.S.2d 601, 603 (1st Dep't 1980) (mem.), ("[i]n the usual case, this might well have been considered not to be prejudicial, but we are not prepared to so conclude under the facts here presented"), it did not hold the error there harmless and it vacated the defendant's conviction. Nor have we found any published opinion of the First Department after *Consolazio* and before Mayo's counsel filed his appeal in October 1983, in which that court affirmed conviction obtained after a *Rosario* violation. On the other hand, we are aware of several cases in which such convictions had been overturned. *See, e.g., People v. Rodelfo,* 80 A.D.2d 815, 815, 437 N.Y.S.2d 317, 318 (1st Dep't 1981) (mem.) (reopening suppression hearing to allow defendant to make use of *Rosario* material); *People v. Gonzalez,* 74 A.D.2d at 764, 425 N.Y.S.2d at 603 (reversing conviction); *People v. Flores,* 57 A.D.2d 783, 784, 394 N.Y.S.2d 670, 670 (1st Dep't 1977) (mem.) (reversing conviction); *see also People v. Kanefsky,* 64 A.D.2d 401, 403, 409 N.Y.S.2d 713, 714 (1st Dep't 1978) (reversing conviction), *reversed,* 50

**536**

N.Y.2d 162, 167, 428 N.Y.S.2d 453, 455, 405 N.E.2d 1019, 1019 (1980) (reversing Appellate Division on ground that undisclosed material was irrelevant). Thus, even the decisions of the First Department were at most ambiguous.

Further, even if it were reasonable to believe that harmless-error analysis would be applied, it is difficult to understand why counsel would not argue that the error in the present case was not harmless. The prosecutor's surprise production of the officers' interview notes in cross-examining those witnesses must have had a dramatic effect that surely affected the fairness of the proceeding. It was certainly arguable that the trial court's instructing the jury not to consider those notes would have been woefully ineffective.

Finally, and most importantly, whether or not the Appellate Division believed harmless-error analysis applied, plainly the Court of Appeals did not. Competent counsel cannot reasonably consider an intermediate court's equivocation to be a basis for omitting an argument that had already been expressly suggested by the state's highest court.

The State also argues that Mayo's state appellate attorney's performance cannot properly be found inadequate because Mayo did not prove that prior to 1985, the defense bar routinely and uniformly argued that a prosecutor's inadvertent failure to disclose *Rosario* material constituted *per se* reversible error. We reject this argument. We would not require a habeas petitioner to provide a statistical analysis comparing the number of cases in which there were *Rosario* violations and the number of cases in which those violations were argued as a *per se* ground for reversal. We regard the significant number of Appellate Division cases adjudicating *Rosario* claims around this time as an indication that the defense bar was generally aware that *Rosario* violations presented viable issues for appeal. Though the State's expert witness Dwyer testified that he did not "think the awareness of the Court of Appeals doctrine revealed in Ranghelle and Jones would have been general throughout the defense bar" (Tr. 64), he stated that Legal Aid attorneys were making such claims, and he conceded that he did not have knowledge as to whether or not such claims were routinely raised. He testified that he could not say that they were not routinely raised.

Finally, we note that instead of arguing the *Rosario* issue, which the Court of Appeals had indicated could not be harmless, Mayo's state appellate counsel chose to argue issues that were particularly weak and had little or no chance of success. For example, he challenged credibility findings made by the court in denying a pretrial suppression motion. And notwithstanding, *inter alia*, Benitez's identification of Mayo and Mayo's possession of Benitez's ring, counsel argued that the evidence was insufficient to support a conviction. We agree with the district court that counsel's failure to raise the *Rosario* claim on appeal fell so far below the accepted level of competence as to deny Mayo his constitutional right to counsel.

**B. *Prejudice***

■ The prejudice component of the *Strickland* test need not detain us long. Given the fact that both Mayo and his codefendant properly objected to the *Rosario* violation at trial and the fact that by raising the issue on appeal the codefendant obtained a new trial, there was at the very least a reasonable probability that, had Mayo's attorney raised that issue on appeal, Mayo too would have been granted a new trial. The State's argument that the Appellate Division would have rejected the *Rosario* claim if Mayo had raised it, an argument supported by the fact that that court rejected the claim when raised by his codefendant, is unpersuasive since the eventual outcome was a vacatur of the conviction by the Court of Appeals. We assume that the Court of Appeals would have treated similarly-situated codefendants similarly. *See Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068 ("An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like.").

**C. *The Contention that New York Law Has Changed***

■ Finally, the State argues that Mayo is not entitled to habeas relief because New

York no longer follows the rule that *Rosario* violations such as this one require a *per se* reversal. *See Fretwell,* —— U.S. at ——, 113 S.Ct. at 844 (petitioner cannot show prejudice from counsel's failure to make an objection that would have been supported by a decision that was subsequently overruled). We reject the suggestion that there has been any change in New York law with respect to violations of the nature that occurred here.

In arguing that the law has changed, the State relies on *People v. Banch,* 80 N.Y.2d 610, 593 N.Y.S.2d 491, 608 N.E.2d 1069 (1992) (*"Banch"*). In *Banch,* the Court of Appeals noted that when "the *Rosario* violation is not a complete failure to disclose the material but rather a delay in its disclosure[,] ... reversal is not required unless the delay substantially prejudiced the defendant." *Banch,* 80 N.Y.2d at 617, 593 N.Y.S.2d at 495, 608 N.E.2d at 1073. For two reasons, this ruling affords the State no relief. First, the *Banch* proposition was the rule as well when *Ranghelle* was decided. Thus, the *Ranghelle* court stated that "[w]hen the People delay in producing *Rosario* material, the reviewing court must ascertain whether the defense was substantially prejudiced by the delay." *Ranghelle,* 69 N.Y.2d at 63, 511 N.Y.S.2d at 585, 503 N.E.2d at 1016. And the *Banch* court confirmed *Ranghelle's* holding that "where a defendant is deprived of *Rosario* material at trial, a new trial is required." *Banch,* 80 N.Y.2d at 615, 593 N.Y.S.2d at 494, 608 N.E.2d at 1072 (citing *Ranghelle* ).

Second, even if *Banch* had stated a new rule, it would be inapplicable to the present case. The trial use of *Rosario* material not theretofore produced cannot be termed a mere "delay." Indeed, in deciding Mayo's codefendant's case, the Court of Appeals stated that the state could not properly characterize its conduct as mere "delay." *Ranghelle,* 69 N.Y.2d at 65, 511 N.Y.S.2d at 586, 503 N.E.2d at 1017. We see no reason to doubt that the Court of Appeals continues to treat *Ranghelle* as good law and that, on direct review, *Rosario* violations are not subject to harmless-error analysis.

## CONCLUSION

For the foregoing reasons, we conclude that Mayo's appellate counsel was ineffective and that Mayo was prejudiced by this ineffectiveness, and we therefore affirm the decision of the district court granting the writ of habeas corpus unless the State affords Mayo an opportunity to present his appeal to the appropriate New York State court within 90 days for consideration of the *Rosario* issue as if it were properly and timely presented, or in the alternative, provides Mayo a new trial within 90 days.