**UNITED STATES of America**

v.

**Ricardo MORALES, a/k/a "Ichi," and Jesus Mendez, a/k/a "G," Defendants.**

**No. S3 96 Cr. 317(DC).**

United States District Court, S.D. New York.

Aug. 12, 1997.

Mary Jo White, United States Attorney for the Southern District of New York by Elizabeth Glazer, Hector Gonzalez, Assistant United States Attorneys, New York City, for U.S.

Paul J. McAllister, New York City, for Defendant Ricardo Morales.

Allan P. Haber, Stephanie Carvlin, New York City, for Defendant Jesus Mendez.

## MEMORANDUM DECISION

CHIN, District Judge.

On May 1, 1997, after a four-week trial, a jury in this case convicted defendant Ricardo Morales on 15 counts and defendant Jesus Mendez on 17 counts of racketeering, conspiracy, armed robbery, assault, felony murder, and weapons violations. The jury found that the defendants and others, including Angel Diaz, who was found dead in his jail cell during the pendency of this case, had engaged in a series of crimes that reached back to 1987 and that ended in a shootout in the Bronx on March 14, 1996.

The shootout followed a carjacking of a black BMW by Diaz, Morales, and Mendez earlier that evening. When the BMW was eventually intercepted by New York City police officers at 183rd Street and the Grand Concourse, Diaz, Morales, and Mendez simultaneously jumped out of the car. Wielding a gun in each hand, Diaz began shooting at the police officers. One of the bullets struck Police Officer Kevin Gillespie in the leg, causing him to bend over. As he leaned forward, a second bullet struck him in the chest above his bullet-proof vest. That bullet proved to be fatal. His gun had never left its holster.

The jury found the defendants guilty of participating in a racketeering enterprise known as the "Park Avenue Boys" or "Webster Avenue Posse" that committed numerous robberies and violent crimes. Specifically, either one or both defendants were found guilty of racketeering, conspiracy, robbery, attempted murder, felony murder, and/or weapons violations in connection with a series of incidents involving a grocery store at 374 East 188th Street on December 22, 1987; a grocery store at 2537 Grand Concourse on September 21, 1988; a grocery store at 917 Castle Hill on September 25, 1988; a grocery store at 1721 East 174th Street on January 3, 1996; an individual in the vicinity of 34 1/2 West 183rd Street on February 25, 1996; an individual in the vicinity of 2721 Morris Avenue on March 9, 1996; an individual in the vicinity of 2717 Morris Avenue on March 13, 1996; and the carjacking and shooting on March 14, 1996.

Defendants now challenge those convictions. Mendez moves pursuant to Fed. R.Crim.P. 29(a) and (c) for a judgment of acquittal on Counts One, Two, Nine through Eleven, and Fifteen through Nineteen of the indictment, and for an order pursuant to Fed.R.Crim.P. 33 for a new trial on Counts Five through Eight, Thirteen, Fourteen and Twenty–One of the indictment. Morales joins in Mendez's motions and also moves pursuant to Rule 29 for a judgment of acquittal as to Racketeering Act Seven. For the following reasons, Mendez's motions are denied and Morales's motions are denied except that his Rule 29 motion is granted as to Racketeering Act Seven.

### DISCUSSION

### A. Motion Pursuant to Fed.R.Crim.P. 29

#### 1. Standard

Rule 29 provides that a court shall order the entry of judgment of acquittal "if the evidence is insufficient to sustain a conviction ...." Fed. R. Crim P. 29. A defendant bears a heavy burden in challenging a conviction based on insufficient evidence. *United States v. Rivera,* 971 F.2d 876, 890 (2d Cir. 1992); *United States v. Soto,* 959 F.2d 1181, 1185 (2d Cir.1992). "A conviction must be upheld if, after viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in its favor, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Medina,* 944 F.2d 60, 66 (2d Cir.1991) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied,* 503 U.S. 949, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992). Thus, "'[a] jury's verdict will be sustained if there is substantial evidence, taking the view most favorable to the government, to support it.'" *Id.* (quoting *United States v. Nersesian,* 824 F.2d 1294, 1324 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987)).

#### 2. Sufficiency of the Evidence

Defendants contend that the evidence presented at trial was insufficient in two respects. First, defendants argue that the government failed to prove the existence of the conspiracy charged in the indictment— *i.e.,* a single conspiracy beginning in 1987 and ending in 1996. Second, defendants argue that the government failed to prove the existence of the criminal enterprise charged in the indictment.

#### a. Conspiracy

■ The jury in this case was given a multiple conspiracy charge. (*See* Tr. at 1411–13). In addition, the assertion that the evidence proved multiple conspiracies rather than the one conspiracy alleged in the indictment was vigorously argued by defense counsel at trial. (*Id.* at 34–39, 1252, 1286, 1291–95). I must assume, therefore, that the jury carefully considered this issue. Thus, since the question of "[w]hether a scheme is one conspiracy or several is primarily a jury question ...," *United States v. Crosby,* 294 F.2d 928, 934 (2d Cir.1961), *cert. denied,* 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962), I must not disturb the jury's verdict unless no rational trier of fact could have concluded that the conspiracy charged in the indictment existed.

■ Defendants argue that the government offered insufficient evidence to prove the existence of a single conspiracy lasting from 1987 until 1996. Defendants assert that if the government proved anything at all, it was the existence of two separate conspiracies—one in 1987–1988, before the defendants went to jail, and one in 1995–1996, after defendants were released from jail. Thus, the crux of defendants' argument is that the government failed to prove that the conspiracy continued while defendants were incarcerated. For at least three reasons, I disagree.

■ First, it is well settled that the incarceration of the members of a conspiracy does not automatically terminate the conspiracy. *See United States v. Coonan,* 938 F.2d 1553, 1560–61 (2d Cir.1991), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); *United States v. Panebianco,* 543 F.2d 447, 453–54 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977); 18 U.S.C. § 1962(5). Moreover, "a single conspiracy is not transposed into a

multiple one simply by lapse of time [or] change in membership . . . ." *United States v. Cambindo Valencia,* 609 F.2d 603, 625 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980). Thus, defendants' incarceration from 1988 to 1995 is not dispositive as to the issue of whether the conspiracy continued during that time.

Second, the jury could have properly concluded that defendants remained a part of the conspiracy, as the jury was not presented with evidence of "some act that affirmatively established that [any member of the gang] disavowed his criminal association with the conspiracy." *United States v. Minicone,* 960 F.2d 1099, 1108 (2d Cir.), *cert. denied,* 503 U.S. 950, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992). The jury was presented with no evidence showing that the Park Avenue Boys had taken any action to affirmatively disband their gang or that Mendez or Morales had disavowed his criminal association with the conspiracy.

█ Third, although the evidence adduced at trial to show the continued existence of the conspiracy while the defendants were incarcerated was not overwhelming, I find that there was sufficient evidence from which a reasonable juror "might [have] fairly conclude[d]" that the conspiracy continued. *United States v. Mariani,* 725 F.2d 862, 865 (2d Cir.1984); *United States v. Taylor,* 464 F.2d 240, 243 (2d Cir.1972). The government showed that from 1987 to 1988 a core group of individuals, including Mendez, Morales and Diaz, committed a series of violent robberies. Those robberies shared a number of similarities, including the type of victim (generally, grocery stores or individuals in the community), location (generally within a few blocks of Park Avenue and in the general vicinity of where defendants lived), and method (at gunpoint with the use or threat of violence to intimidate the victims). The evidence also showed that although this activity was involuntarily suspended when the members of the Park Avenue Boys went to jail, it resumed within months after their release from prison with essentially the same core group—Diaz, Mendez and Morales—committing crimes strikingly similar (same types of victim, same locale and same methods) to the ones committed before their incarceration. (Tr. at 292, 294, 323). Hence, the jury could have reasonably inferred that the conspiracy continued to exist after defendants went to jail, and that the members of that conspiracy agreed to re-emerge and continue the conspiracy after they were released from prison.[1]

In addition, the government introduced evidence showing that Mendez and Morales sought permission to call common telephone numbers while in jail. (Tr. at 358, 361–62; Gov't Ex. 315). And even though he was scheduled to be released shortly after Mendez, Diaz nevertheless placed Mendez on his calling list to ensure that they could remain in communication while Mendez was still incarcerated. (Tr. at 358, 361–62; Gov't Ex. 315). The jury was entitled to infer from this evidence that the members of the Park Avenue Boys were endeavoring to continue their association even while incarcerated.

Thus, viewing the evidence in the light most favorable to the government, and drawing all inferences in its favor, I find that there was sufficient evidence offered at trial from which a rational trier of fact could conclude that the government proved the existence of the conspiracy alleged in the indictment.

#### b. *The Enterprise*

█ Under the racketeering statute, an enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). An enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* Defendants argue that

---

1. Although the evidence showed that there were changes in the conspiracy, these changes were not inconsistent with the jury's finding of a continuous conspiracy. For example, the Park Avenue Boys were originally led by Joey Aponte, who killed himself shortly before the others went to prison. The record contained evidence connecting Aponte to Diaz, Mendez, and Morales in 1987 and 1988. After Diaz, Mendez, and Morales were released from prison Diaz emerged as the leader in place of Aponte. Nonetheless, the core group remained essentially the same.

the evidence offered at trial was insufficient to prove the existence of a criminal enterprise. Specifically, they argue that the enterprise ceased to exist at the time the members entered prison, and, therefore, that it was not an ongoing organization. Moreover, defendants argue that there was little or no proof that the associates of the enterprise functioned as a continuing unit while in prison. For three reasons, I disagree.

First, the cases cited by defendants in support of their arguments are distinguishable. For example, in *United States v. Mauro*, 80 F.3d 73 (2d Cir.1996), and *United States v. Coonan*, 938 F.2d 1553 (2d Cir. 1991), *cert. denied*, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992), the issue was whether the evidence presented at trial was sufficient to prove that the enterprise continued despite the incarceration of its leader. In answering this question, the Court considered the activities carried on by gang members who were not incarcerated. In this case, however, the question is whether the evidence was sufficient to prove that the enterprise continued despite the incarceration (or death) of *all* its members. Hence, it is impossible to consider the activities carried on outside of prison during their period of incarceration, and what must be focused on instead is what the gang members did before and after their incarceration and what they did while in the confines of prison to continue their enterprise. Thus, the factors set forth by the Second Circuit in *Coonan* and *Mauro*, and relied on by defendants, are not controlling here.

■ Second, for the reasons stated above in my discussion of the conspiracy charge, I find that the government did introduce evidence from which a reasonable jury could conclude that, despite being incarcerated, the Park Avenue Boys were able to survive as a gang and re-emerge to carry on their pattern of crime. The Park Avenue Boys' resumption of a similar pattern of racketeering activity shortly after their release from prison constitutes strong circumstantial evidence from which the jury could have reasonably concluded that the "enterprise" in this case never ceased to exist.

Third, allowing defendants to use their imprisonment to their advantage would permit them to escape liability for the full scope of their participation in a RICO enterprise. This reasoning finds support in another section of the RICO statute. Under 18 U.S.C. § 1961(5), a pattern of racketeering activity requires at least two acts of racketeering that "occurred within ten years" of each other. 18 U.S.C. § 1961(5). This ten-year period, however, excludes any period of imprisonment. *Id.* By this exclusion, Congress meant to ensure that no defendant would benefit from an involuntary cessation of his criminal activity. The same reasoning must apply here.

For all these reasons, I find that there was sufficient evidence from which a rational jury could conclude that the gang continued as a criminal enterprise from 1987 until 1996, and that defendants have failed to meet the heavy burden placed upon them when challenging the sufficiency of the evidence supporting a criminal conviction. Accordingly, defendants' motions for a judgment of acquittal pursuant to Rule 29 on these grounds are denied.

### 3. *The Robbery of the Restaurant*

■ In addition to joining in the Rule 29 motion made by Mendez, Morales also moves, pursuant to Rule 29, for a judgment of acquittal as to Racketeering Act Seven— *i.e.*, the robbery of a restaurant at 336 East 188th Street. Relying on the Supreme Court case of *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), Morales alleges that the government offered insufficient evidence to sustain a finding of guilt as to that Act. I agree.

■ In *Opper*, the Supreme Court held that testimony by witnesses, other than the accused, as to oral or written extrajudicial admissions of guilt made by the accused, cannot be accepted as proof of the crime charged unless corroborating evidence is introduced. *Id.* at 89, 75 S.Ct. at 162. In requiring corroborating proof, the Supreme Court was seeking to ensure the reliability of the confession by establishing, through independent evidence, that the crime to which the accused confessed in fact occurred, and that

it occurred in the manner described in the confession. *Id.* at 89–90, 75 S.Ct. at 162–63; *see Smith v. United States,* 348 U.S. 147, 153, 75 S.Ct. 194, 197–98, 99 L.Ed. 192 (1954). Thus, while the government is not required to introduce corroborating evidence to prove that the confessor actually committed the crime, it must introduce "substantial evidence [showing] that the offense has been committed." *Smith,* 348 U.S. at 156, 75 S.Ct. at 199.

In the present case, the only evidence offered by the government to prove Racketeering Act Seven was the testimony of Detective Larkin of the New York City Police Department. Larkin testified that on March 15, 1996, he questioned Morales about the robbery of a restaurant located at 336 East 188th Street in the Bronx. (Tr. at 458). Larkin further testified that Morales admitted to robbing a "weed spot" at that location and gave a written statement to that effect. (*Id.;* Gov't Ex. 500). Thus, the jury was presented with testimony concerning an extrajudicial admission of guilt made by the accused, and, pursuant to the Supreme Court's holdings in *Opper* and *Smith,* the government was required to introduce substantial evidence showing that the robbery had actually occurred.

■■■■ The only evidence offered to make that showing, however, was further testimony from Larkin:

Q. Now, drawing your attention to the evening of February 28, 1996, were you assigned to investigate the report of a robbery [of a restaurant at 336 East 188th Street] on that night?

A. I was.

Q. And what investigatory steps did you take?

A. I contacted the complainant and interviewed him regarding the facts of the case.

(Tr. at 457). While this evidence was admissible for the purpose of describing Larkin's actions on February 28, 1996, it was not admissible for the purpose of proving that a robbery at the restaurant actually occurred. First, Larkin simply testified that he had investigated a complaint of a robbery at 336 East 188th Street. He did not purport to give any details of the robbery, nor did he have the personal knowledge to enable him to testify as to any such details. Second, if offered to prove the fact of the robbery, his testimony would be inadmissible hearsay, for he would then be offering the complainant's out-of-court statement to prove the truth of the matter asserted therein, *i.e.,* that a robbery at the restaurant had occurred. Thus, the jury was presented with no evidence that the restaurant was actually robbed other than Morales's extrajudicial confession. Accordingly, Morales's motion for a judgment of acquittal pursuant to Rule 29 as to Racketeering Act Seven is granted.[2]

**B.** *Motion Pursuant to Fed.R.Crim.P. 33*

Defendants also move for a new trial pursuant to Rule 33 as to Counts Five through Eight, Thirteen, Fourteen and Twenty–One of the indictment. Defendants' Rule 33 motion, however, is premised solely on the success of their Rule 29 motions. Thus, because I have denied those motions (except as to Racketeering Act Seven), their Rule 33 motion is also denied.

### CONCLUSION

For the foregoing reasons, defendants' motions for a judgment of acquittal pursuant to Rule 29 as to Counts One, Two, Nine through Eleven and Fifteen through Nineteen of the indictment and for a new trial pursuant to Rule 33 as to Counts Five through Eight, Thirteen, Fourteen and Twenty–One of the indictment are denied, except that Morales's Rule 29 motion is granted as to Racketeering Act Seven.

SO ORDERED.

---

**2.** The practical effect of this judgment of acquittal with respect to Racketeering Act Seven is insignificant, as the jury still found Morales guilty of Racketeering Acts 2(a), 2(b), 3(a), 3(b), 3(c), 3(d), 5(a), 5(b), 6(a), 6(b), 8(a), 8(b), 9(b), 10(a), 10(b), and 11. Thus, his conviction on the RICO Counts—*i.e.,* Count One and Count Two— are not affected.