UNITED STATES of America,
Appellee,

v.

Angel DIAZ and Jose Ruiz, Defendants,

Jesus Mendez and Ricardo Morales,
Defendants–Appellants.

Nos. 01–1072, 01–1080.

United States Court of Appeals,
Second Circuit.

Nov. 28, 2001.

Allan P. Haber, New York, NY, for appellant Jesus Mendez.

Roger L. Stavis, Stavis & Kornfeld, LLP, New York, NY; Frederick E. Schmidt, on the brief, for appellant Ricardo Morales.

Elizabeth Glazer, Special Assistant United States Attorney, Southern District of New York; Mary Jo White, United States Attorney; Gary Stein, Assistant United States Attorney, on the brief, for appellee.

Present MINER, McLAUGHLIN, and STRAUB, Circuit Judges.

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgments of the District Court are hereby AFFIRMED.

Defendants–Appellants Jesus Mendez and Ricardo Morales appeal from judgments of conviction entered on March 22,

2001, by the United States District Court for the Southern District of New York (Denny Chin, *Judge* ). The defendants contend that the District Court erred in its application of the United States Sentencing Guidelines and acted vindictively in sentencing them, and therefore their sentences should be vacated and the case should be remanded to the District Court for resentencing.

In the amended twenty-one count indictment used at trial, Mendez and Morales were charged with participating and conspiring to participate in a racketeering enterprise through predicate acts of robbery and murder, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; conspiring to commit and committing armed robberies in violation of the Hobbs Act, 18 U.S.C. § 1951; committing assault, attempted murder and murder in aid of racketeering, in violation of 18 U.S.C. § 1959; using and carrying firearms in connection with crimes of violence, in violation of 18 U.S.C. § 924(c); and possessing firearms after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

Evidence at trial established, among other things, that at about 9:15 p.m. on March 14, 1996, Mendez, Morales, and Angel Diaz, each armed with a gun, approached two other men at 178th Street and Arthur Avenue in the Bronx. Mendez, Morales, and Diaz stole jewelry and car keys from one of the men, then drove away in that man's black BMW. A few minutes later, they stopped the BMW briefly to rob another man, then drove toward the Grand Concourse. New York Police Officers John McGreal and Kevin Gillespie, in plain clothes and in an unmarked police car, received a radio report of the car-jacking of the BMW. At about 9:45 p.m., the officers spotted the BMW, called for assistance, and followed the BMW on to the Grand Concourse. At 183rd Street and the Grand Concourse, another unmarked police car blocked the path of the BMW while the car driven by Officers McGreal and Gillespie pulled up behind the BMW. As Officers McGreal and Gillespie stepped out of their car, Mendez, Morales, and Diaz exited the BMW. Diaz fired two shots at Officer Gillespie, killing him. Other officers pursued and arrested Diaz and Mendez. Morales was apprehended the next day. At the time of their arrests, Mendez, Morales, and Diaz each were carrying items belonging to the robbery victims. On this appeal, neither Mendez nor Morales appears to challenge the veracity of any of these facts.

Following trial, Morales and Mendez were convicted of fifteen and seventeen counts respectively, encompassing all of the offenses listed above. On August 13, 1997, the District Court sentenced Morales to life imprisonment plus 105 years and Mendez to life imprisonment plus 125 years. Both defendants appealed. On July 26, 1999, we reversed and vacated Morales' and Mendez' convictions on the RICO counts and other counts dependent on RICO, but affirmed their convictions for robbery in violation of the Hobbs Act, use and possession of a firearm in relation to the Hobbs Act offenses, and possession of a firearm as a felon. *See United States v. Morales,* 185 F.3d 74 (2d Cir.1999), *cert. denied,* 529 U.S. 1010, 120 S.Ct. 1282, 146 L.Ed.2d 229 (2000). We remanded to the District Court for resentencing on the affirmed convictions. *Id.* at 85.

Prior to the resentencing, the United States Probation Office issued a pre-sentence report. The report noted that the remaining count of conviction yielding the highest offense level was the felon-in-possession count: if "the defendant used or possessed any firearm or ammunition in connection with the commission or at-

tempted commission of another offense" and "death resulted," then the Sentencing Guidelines require that the court apply the "most analogous offense guideline" from the homicide guidelines in Section 2A1, if the result would be a higher offense level than under the felon-in-possession guideline. U.S.S.G. § 2K2.1(c)(1) (2000). The pre-sentence report concluded that in light of the killing of Officer Gillespie by Mendez' and Morales' co-defendant Diaz, the most analogous homicide guideline was Section 2A1.1(a), the guideline for first-degree murder (including felony murder). The applicable offense level was 43, corresponding to a recommended term of life imprisonment. However, because none of the remaining counts of conviction carried a statutory maximum of life imprisonment, Probation recommended the imposition of consecutive terms of imprisonment on the remaining counts, so as to approximate the recommended term pursuant to Section 5G1.2(d) of the Sentencing Guidelines. At resentencing on January 29, 2001, the District Court essentially adopted the reasoning of the pre-sentence report. The District Court imposed the statutory maximum sentences on each of the remaining counts of conviction and required that the sentences be served consecutively, for a total term of incarceration of 110 years for each defendant.

▬ Both defendants argue that the District Court erred in applying the sentencing guideline for first-degree murder, Section 2A1.1, rather than the guideline for second-degree murder, Section 2A1.2, as the "most analogous" guideline pursuant to Section 2K2.1(c)(1). The defendants contend that because New York State law classifies felony murder as second-degree murder, that classification should determine the applicable federal sentencing guideline. Thus articulated, the flaw in this argument is evident. A *state law* classification of felony murder does not determine the applicable *federal* sentencing guideline. The federal murder statute defines first-degree murder as including any killing "committed in the perpetration of, or attempt to perpetrate ... robbery."* 18 U.S.C. § 1111. Section 2A1.1 of the Sentencing Guidelines applies to first-degree murder, cross-references the federal murder statute, and prescribes an offense level corresponding to a sentence of life imprisonment. Application Note 1 to the first-degree murder guideline notes that "this guideline ... applies when death results from the commission of certain felonies," underscoring the rule that felony murder is first-degree murder under federal law. We find no error in the District Court's interpretation and application of the Sentencing Guidelines. *See, e.g., United States v. Tocco*, 135 F.3d 116, 130–31 (2d Cir.1998) (affirming district court's application of Section 2A1.1 as "most analogous" guideline where defendant was con-

---

* We disagree with Mendez's assertion that his actions cannot be analogized to felony murder because he was not in immediate flight from the robberies when Diaz shot and killed Officer Gillespie. While the first-degree murder statute, 18 U.S.C. § 1111, makes no reference to "immediate flight," "even statutes without such language have rather consistently been construed to extend to immediate flight situations." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.5(f), at 225–26 (1986). The evidence at trial showed that the killing of Officer Gilles-pie occurred roughly thirty minutes after the robberies, in the same neighborhood, as the defendants were exiting the car stolen in the first robbery. Between the second robbery and the encounter with the police officers, the defendants had not stopped the car or engaged in any activity other than driving away from the locations of the robberies, and were still in possession of all of the stolen property. We find no error in the District Court's treatment of the defendants' conduct as most analogous to felony murder, which is first-degree murder under federal law.

victed of arson homicide and victim's death "was unknowingly and unintentionally caused"), *cert. denied sub nom. Ferranti v. United States,* 523 U.S. 1096, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998); *United States v. Hicks,* 103 F.3d 837, 848 (9th Cir.1996) (affirming district court's application of Section 2A1.1 as "most analogous" guideline, pursuant to Section 2K2.1(c)(1), where defendant was convicted of firearms charge arising from car-jacking in which other participant killed victim), *cert. denied,* 520 U.S. 1193, 117 S.Ct. 1483, 137 L.Ed.2d 694 (1997).

▮  Mendez (but not Morales) also argues that the District Court acted vindictively by resentencing him to 110 years for conduct that originally received a 45–year sentence (which was subsumed in the overall original sentence of life imprisonment plus 125 years). The Supreme Court has held that a defendant's due process rights are violated when a district court, acting vindictively, imposes a more severe sentence following the defendant's successful challenge to the original sentence or conviction. *North Carolina v. Pearce,* 395 U.S. 711, 725–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). But in *Alabama v. Smith,* 490 U.S. 794, 799–800, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court substantially narrowed the *Pearce* doctrine, holding that where there is no "reasonable likelihood" that the higher sentence was the product of actual vindictiveness by the sentencing judge, there shall be no presumption of vindictiveness. In *United States v. Atehortva,* 69 F.3d 679 (2d Cir.1995), *cert. denied sub nom. Correa v. United States,* 517 U.S. 1249, 116 S.Ct. 2510, 135 L.Ed.2d 199 (1996), we elaborated on the limited applicability of the vindictiveness presumption:

> When a defendant challenges convictions on particular counts that are inextricably tied to other counts in determining the sentencing range under the guidelines, the defendant assumes the risk of undoing the intricate knot of calculations should he succeed. Once this knot is undone, the district court must sentence the defendant de novo and, if a more severe sentence results, vindictiveness will not be presumed.

*Id.* at 685–86 (citation omitted). This scenario is precisely what unfolded here, as we anticipated in our resolution of Mendez's earlier appeal: "[b]ecause the sentences imposed on the reversed and remaining counts are or may be interdependent, the District Court should resentence the defendants on the remaining counts and should treat the resentencing as a *de novo* sentencing." *Morales,* 185 F.3d at 85 (citing *Atehortva,* 69 F.3d at 685). The District Court conducted a *de novo* sentencing of the defendants and, under *Atehortva,* no presumption of vindictiveness attaches to the resulting sentences. Furthermore, Mendez has made no showing of actual vindictiveness by the District Court. In the absence of either presumed or actual vindictiveness, Mendez's argument must be rejected.

We have examined all of the defendants' contentions and find them to be without merit. For the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.