**Jesus MENDEZ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Nos. 02 Civ. 10265(DC), 96 Cr. 0317(DC).

United States District Court, S.D. New York.

July 28, 2005.

Jesus Mendez, White Deer, PA, Petitioner Pro Se.

David N. Kelley,United States Attorney for the Southern District of New York by Helen V. Cantwell, Assistant United States Attorney, New York, NY, Attorney for Respondents.

## OPINION

CHIN, District Judge.

*Pro se* petitioner Jesus Mendez moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Mendez challenges his conviction on five grounds of ineffective assistance of appellate counsel, arguing that appellate counsel's failure to raise a number of arguments violated his Sixth Amendment rights. Mendez also moves for discovery pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings. For the reasons set forth below, Mendez's motions pursuant to § 2255 and Rule 6(a) are denied.

## PROCEDURAL HISTORY

After a jury trial, Mendez was convicted on May 1, 1997 of racketeering and Hobbs Act and firearms violations. I assume familiarity with the facts of the case and restate them here only briefly. *See United States v. Morales,* 974 F.Supp. 315 (S.D.N.Y.1997), *aff'd in part and rev'd in part,* 185 F.3d 74 (2d Cir.1999), *cert. denied,* 529 U.S. 1010, 120 S.Ct. 1282, 146 L.Ed.2d 229 (2000). In short, Mendez and a co-defendant were convicted of engaging in a series of armed robberies, one of which culminated in a fatal shooting by a co-conspirator of a New York City police officer in the Bronx on March 14, 1996.

On August 13, 1997, Mendez was sentenced to imprisonment for life plus 125

years. He appealed, and on July 26, 1999, the Second Circuit reversed and vacated his convictions on the Racketeer Influenced and Corrupt Organizations ("RICO") counts and other counts dependent on RICO, but affirmed his convictions for robbery in violation of the Hobbs Act, use and possession of a firearm in relation to the Hobbs Act offenses, and possession of a firearm as a felon. *See* 185 F.3d at 77. On January 29, 2001, I resentenced Mendez to 110 years imprisonment. Mendez again appealed, and the Second Circuit affirmed on November 28, 2001. *United States v. Diaz*, 25 Fed.Appx. 27 (2d Cir. 2001). Mendez did not petition for certiorari.

On November 20, 2002, Mendez moved pursuant to § 2255 to vacate, set aside, or correct the January 29, 2001 sentence on the grounds that he was denied effective assistance of counsel during the appeals process in violation of his Sixth Amendment rights. By memorandum decision and order docketed May 1, 2003, this Court denied the petition, without requesting a response from the government. *Mendez v. United States*, No. 02 Civ. 10265, 2003 WL 2006603 (S.D.N.Y. May 1, 2003).

Mendez then appealed to the Second Circuit, requesting a certificate of appealability based on fourteen claims of ineffective assistance of appellate counsel. On March 25, 2004, the Second Circuit granted in part and denied in part Mendez's motion. The Second Circuit vacated the judgment of this Court denying the § 2255 motion, finding that certain of Mendez's claims warranted further consideration. The case was remanded to this Court to allow Mendez to file supporting papers for his claims that appellate counsel should have argued that: (1) the prosecution improperly vouched for the credibility of its witnesses; (2) the district court, at re-

sentencing, improperly increased the sentence based on the conclusion that Mendez had committed first-degree murder, an issue that should have been charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt; (3) the district court improperly admitted evidence related to Mendez's prior felony convictions; (4) the district court infringed on Mendez's right to cross-examination and to defend himself; and (5) prosecutorial misconduct constituted a violation of due process. The Second Circuit denied and dismissed Mendez's remaining claims for clear lack of merit. *Mendez v. United States*, No. 03–2412 (2d Cir. March 25, 2004) (mandate granting certificate of appealability in part and remanding to district court).

On July 7, 2004, Mendez filed documents in support of the second through fifth claims listed above and on July 20, 2004, he filed an amendment to his memorandum of law. The Court also received opposition papers from the government as well as reply papers from Mendez. In addition, on October 28, 2004, Mendez moved for discovery pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings. Finally, Mendez moved on January 28, 2005 for leave to amend and supplement his original § 2255 motion in light of the Supreme Court's holding in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

### DISCUSSION

#### A. *Applicable Law*

To prove ineffective assistance of counsel, Mendez must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) he was prejudiced by counsel's deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 686–88, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984); *United States v. Vegas,* 27 F.3d 773, 777 (2d Cir.1994).

When the court applies the *Strickland* test, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre,* 912 F.2d 555, 561 (2d Cir.1990) (citation omitted) (quoting *Strickland,* 466 U.S. at 696–97, 104 S.Ct. 2052).

■ Although the *Strickland* test originated for the purposes of evaluating a claim of ineffective assistance of trial counsel, it has been extended to apply to appellate counsel. *See McKee v. United States,* 167 F.3d 103, 106 (2d Cir.1999); *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992); *Lawrence v. Artuz,* 91 F.Supp.2d 528, 539 (E.D.N.Y.2000). Appellate counsel is not required to raise all non-frivolous arguments. *Mayo,* 13 F.3d at 533. Consequently, it is not sufficient to demonstrate that counsel omitted a non-frivolous argument. *Id.* "[I]ndeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney,* 882 F.2d 1428, 1434 (9th Cir.1989). Failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is "clearly stronger" and more significant than those presented. *Mayo,* 13 F.3d at 533 (citing *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1985)).

■ To show prejudice by appellate counsel's failings under the second prong of the *Strickland* test, petitioner must establish a reasonable probability that the omitted "claim would have been successful before the [appellate court]." *See Mayo,* 13 F.3d at 534 (quoting *Claudio,* 982 F.2d at 803).

## B. *Application*

Mendez submits supporting papers for four of the five claims referred to by the Second Circuit in its remand, but he does not submit any support for the claim that appellate counsel failed to argue that the government improperly vouched for the credibility of witnesses. Mendez has not specified how the government vouched for the credibility of witnesses in any of his documents. Moreover, the Court has reviewed the transcript of the government's summation and found no improper statements, and surely no statements so clearly improper that appellate counsel would have been constitutionally ineffective to have failed to raise. (Tr. 1203–45). Because this Court has found no support for this claim and Mendez provides no basis to reconsider this claim, it is denied.

Preliminarily, I note that Mendez was represented on appeal by capable and experienced counsel, the same attorneys who provided effective and spirited representation at trial. Moreover, these attorneys obtained a significant partial victory on the first appeal, as they obtained a reversal of the RICO and RICO-related counts. It is difficult to conclude that the arguments they did not raise in the second appeal were "clearly stronger" and more significant than the issues they did raise.

I address the remaining four arguments below, as well as Mendez's Rule 6(a) motion.

### 1. *Failure to Argue Improper Enhancement*

■ Mendez contends that his appellate counsel was constitutionally ineffec-

tive because counsel failed to challenge the district court's calculation of Mendez's sentence, an argument that substantially relies upon the Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The *Apprendi* Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S at 490, 120 S.Ct. 2348. In *Blakely*, the Supreme Court extended its *Apprendi* holding by overturning a sentence imposed under the Washington State sentencing scheme that had permitted judges to enhance sentences based on facts not submitted to the jury. *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Mendez contends that the district court improperly enhanced his January 29, 2001 sentence by using the federal sentencing guidelines range for first-degree murder even though he was originally charged in state court with second-degree murder under New York State law.[1] According to Mendez, his sentence, calculated under the first-degree murder guidelines range, exceeded the statutory maximum allowed for second-degree murder. Mendez argues that the first-degree murder charge was not submitted to the jury and proven be-

yond a reasonable doubt, and that therefore his Sixth Amendment rights were violated. This argument is without merit.

First, the jury did find Mendez guilty of the felony murder of Officer Gillespie. The Second Circuit reversed and vacated the convictions on the RICO and RICO-related counts, on unrelated grounds, but the fact is the jury did find that Officer Gillespie was fatally shot during the aftermath of a car-jacking. Of course, the jury's finding is now vacated, but under the circumstances it is understandable that appellate counsel did not press this precise issue.

Second, this Court's application of the first-degree murder guidelines range was correct. When Mendez was originally sentenced, this Court relied upon the offense level assigned to the RICO charges to determine the guidelines range. After the Second Circuit reversed the conviction for RICO and RICO related charges, Mendez's sentence was recalculated based on the remaining count with the highest offense level, his violation of 18 U.S.C. § 922(g) for possession of a firearm by a prior felon. Because Mendez possessed a firearm in connection with the robberies on March 14, 1996, which ultimately led to the death of Officer Gillespie, Mendez is guilty of felony murder. Even with the reversed counts, however, it is indisputable that Gillespie died on March 14, 1996 during the course of a felony. Mendez's assertions that he was not the shooter re-

---

1. In his briefing papers, Mendez also mentions that his appellate counsel should have challenged the sentencing calculation because (1) the Second Circuit reversed the count that encompassed the felony murder charge; (2) prejudicial spillover from the RICO charges may have contributed to the jury finding that he possessed a firearm; (3) Mendez was not originally sentenced based on the § 922(g) count; and (4) Mendez was neither the shooter responsible for Officer Gillespie's death nor was he charged with possession of the specific

weapon connected to the shooting. (*See* Mendez July 7, 2004 Mem. of Law at 6–7). Mendez does not provide any further argument in regard to these issues; this section of his brief—addressing appellate counsel's failure to argue *improper enhancement*—otherwise solely focuses on the first-degree murder calculation. This Court addresses these sub-issues within the general discussions of the first-degree murder calculation and the admissibility of evidence relating to Mendez's prior felony convictions.

sponsible for the murder and did not possess the specific weapon used in the murder are not defenses for felony murder. *See* N.Y. Penal Law § 125.25(3) (2004); *People v. Simmons,* 143 A.D.2d 857, 533 N.Y.S.2d 128, 129 (2d Dep't 1988). Therefore, I enhanced Mendez's base offense level to account for the felony murder. The guidelines require that the Court apply the most analogous federal offense level, which is first-degree murder, corresponding to a base offense level of 43 and a sentence of life imprisonment. Although the guidelines required a sentence of life in prison for a level 43 offense, that sentence exceeded the statutory maximum permitted. Therefore, I adopted the recommendations of the pre-sentence report and imposed the maximum sentence on each remaining count to run consecutively, totaling 110 years imprisonment.

Third, appellate counsel did appeal the issue, at least in some sense. On Mendez's direct appeal of this Court's calculation of his January 21, 2001 sentence, the Second Circuit affirmed this Court's application of the guidelines: "We find no error in the District Court's treatment of the defendant's conduct as most analogous to felony murder, which is first-degree murder under federal law." *United States v. Diaz,* 25 Fed.Appx. 27, 30 n. * (2d Cir.2001). Appellate counsel's failure to raise this issue precisely in the manner that Mendez now says it should have been raised was not constitutional error.

Fourth, Mendez's reliance on *Apprendi* and *Blakely* is misplaced in light of the new rules articulated in *United States v. Booker,* — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Now that the federal guidelines are advisory only, *Apprendi* and *Blakely* are of no help to Mendez.

■ Fifth, the Second Circuit in any event foreclosed Mendez's arguments in two recent decisions in which it announced respectively that neither *Booker* nor *Blakely* applies retroactively to cases on collateral review. *See Guzman v. United States,* 404 F.3d 139, 141 (2d Cir.2005); *Carmona v. United States,* 390 F.3d 200, 202–03 (2d Cir.2004). Mendez's conviction was final in 2001, before *Blakely* and *Booker* were decided. Therefore, Mendez's motion to reconsider his sentence is denied, and his subsequent request to amend his petition in light of *Booker* is also denied.

Finally, even assuming *Booker* were to apply retroactively to Mendez and I were presented with the opportunity to consider re-sentencing Mendez, I would impose the same sentence under an advisory sentencing scheme. In the circumstances of this case, a 110–year sentence is reasonable and serves the interest of justice.

Mendez's motion to vacate, set aside, or correct his sentence is denied, and his subsequent request to amend his petition in light of *Booker* is also denied.

### 2. *Failure to Argue Improperly Admitted Evidence Relating to Prior Felony Convictions*

■ Mendez argues that appellate counsel was ineffective for failing to appeal the district court's decision to admit evidence relating to Mendez's prior felony convictions in regard to the felony in possession of a firearm count. In light of the Second Circuit's reversal of the racketeering charges, Mendez contends that the district court should have allowed him to stipulate to evidence regarding his prior felony convictions, thereby eliminating potential spillover prejudice. This argument is without merit.

In most cases, the government is not required to accept a stipulation to a prior felony conviction where evidence of the felony constitutes relevant proof for the

government's case. The Supreme Court affirmed in *Old Chief v. United States* the standard rule that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the [g]overnment chooses to present it." 519 U.S. 172, 186–87, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). In limited circumstances, however, where a defendant offers to stipulate to a prior conviction "dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him," the government may be required to accept a stipulation instead of presenting evidence proving the fact. *Id.* at 190, 117 S.Ct. 644. Rule 403 requires the trial court to conduct a balancing test to determine whether the "probative value" of admitting evidence to prove the prior conviction outweighs the "prejudicial effect" the evidence may have on the jury. *See* Fed. R.Evid. 403; *Old Chief,* 519 U.S. at 185, 117 S.Ct. 644.

Mendez argues that because the evidence from his prior conviction was admitted to prove the RICO charges, he never had the opportunity to stipulate to the prior felony aspect of the charge or explore less prejudicial alternatives. Here, the government would not have been required to accept a stipulation because evidence from the reversed RICO charges did not have an unfair prejudicial effect on the remaining counts. The Second Circuit thoroughly addressed this issue in Mendez's first appeal, holding that it saw "no prejudicial spillover of the evidence from the racketeering and the racketeering-dependent charges." *Morales,* 185 F.3d at 82. The Court reasoned that (1) evidence from the reversed counts was no more inflammatory than the remaining counts; (2) "most of the evidence introduced was admissible as to the remaining counts"; and (3) the government's case for conviction was strong. *Id.* at 83. Moreover, the

Second Circuit specifically noted that "much of the evidence related to the events of March 14, 1996 would have been admissible even if the reversed counts had never been charged because the defendants were charged with possession of firearms as convicted felons on that date." *Id.* Appellate counsel's decision to forgo this issue on the second appeal was well within an objective standard of reasonableness.

### 3. *Failure to Argue Violation of Right to Cross Examination and Right to Defend*

Mendez argues that his appellate counsel was ineffective for failing to appeal the district court's decision to limit cross-examination of certain witnesses. The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to confront and cross-examine witnesses against him. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). This right, however, may be subject to limitations imposed by the trial court. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In Mendez's trial, I properly limited cross-examination of Franklin Vargas, Carlos Basabe, Carmen Martin, and Alfred Bosio.

■ First, I appropriately precluded cross-examination of Vargas on potential drug dealings at his store. As I held before trial, Mendez "may not..." attack the businesses [of the victims] in question as illegitimate or mere fronts for the sale of illegal drugs. *United States v. Morales,* 1997 WL 164296 *2 (S.D.N.Y. April 8, 1997). The Hobbs Act prohibits illegal interference with interstate commerce, even in cases where the commodity traveling in interstate commerce is illegal. *See United States v. Jones,* 30 F.3d 276, 285–

86 (2d Cir.), *cert. denied,* 513 U.S. 1028, 115 S.Ct. 602, 130 L.Ed.2d 513 (1994). Therefore, proving that Vargas may have engaged in illegal operations at his store was irrelevant to Mendez's defense to the Hobbs Act charges.

Moreover, I would not allow Mendez to attack Vargas's credibility through cross-examination based on alleged drug operations at his store. The arguable probative value of establishing that Vargas was dealing drugs was outweighed by the danger of unfair prejudice to the government's case. (Tr. at 218). *See* Fed.R.Evid. 403. Mendez's trial counsel failed to show a "good faith basis" for the allegations of drug dealings by Vargas. *Id.* Considering Vargas's extensive and continuous cooperation with the police, Mendez's theory that Vargas had an incentive for a quick resolution of Mendez's case—so that police would not continue to investigate him—was not persuasive.

Second, it was proper to preclude Mendez from impeaching Basabe through cross-examination on his arrest for a misdemeanor. Under Rule 609, evidence that a witness was convicted of a crime is not admissible unless the crime was punishable by death or imprisonment for more than one year. Fed.R.Evid. 609(a). Here, the incident could not be admitted as impeachment evidence because the sentence for a misdemeanor, by definition, is up to one year. *See* 18 U.S.C. § 2581(b)(6). Moreover, there is no evidence in the record that Basabe was actually convicted of a misdemeanor. (Tr. 365–67).

 Third, this Court similarly ruled that Martin's criminal history, including a conviction for petty larceny and two more recent convictions, was not admissible because none of Martin's sentences exceeded one year. (Tr. 574–75). *See* Fed.R.Evid. 609(a). Martin's criminal history was also not admissible under the second prong of

Rule 609(a), which renders evidence of a witness's prior conviction for a crime that "involved dishonesty or false statement, regardless of the punishment" automatically admissible. *See id.; United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.1977). In deciding whether a conviction for petty larceny may be introduced as evidence, a district court must "look beyond the elements of the offense to determine whether the conviction rested upon facts establishing dishonesty or false statement." *United States v. Payton,* 159 F.3d 49, 57 (2d Cir.1998). If the crime involved "nothing more than stealth," it is not admissible. *Hayes,* 553 F.2d at 827. If, for example, it involved "false written or oral statements . . . the conviction would be automatically admissible." *Id.* The burden of proof lies with "the proponent of the evidence." *Fletcher v. City of N.Y.,* 54 F.Supp.2d 328, 331 (S.D.N.Y.1999). Because Mendez offered no evidence that Martin's petty larceny conviction was for a crime of dishonesty or false statement, he failed to meet his burden of proof under the second prong of Rule 609(a). Moreover, even assuming the petty larceny conviction did involve dishonesty or a false statement, Martin's testimony did not inculpate Mendez. Her testimony included details of her being shot on March 14, 1996, but she did not mention Mendez and could not identify the shooter. (Tr. 576–79). Trial counsel appropriately and understandably chose not to cross-examine Martin at trial and waived any objections, thereby foreclosing an appeal on this basis. The failure to appeal this Court's decision not to permit cross-examination on Martin's prior convictions, therefore, was not a "breakdown in the adversarial process." *See Strickland,* 466 U.S. at 696, 104 S.Ct. 2052.

Fourth, Mendez also argues that Bosio's testimony regarding his interview with Edgar Colon was hearsay and should not

have been admitted. Bosio, the responding police officer to Mendez's robbery, testified only to Edgar Colon's first few statements regarding the nature of the robbery. (Tr. 595, 600). I did not permit Bosio to testify to the entire interview, but allowed questioning under the excited utterance exception to the hearsay rule. *See* Fed.R.Evid. 803. Colon's statements clearly fall under this exception, and appellate counsel reasonably decided to forgo this argument. Even if counsel had advanced this argument on appeal, Mendez has not shown a reasonable probability of success on appeal.

Mendez also argues that the district court infringed on his right to defend himself by denying requests for subpoenas and a continuance prior to the start of trial. This claim is without merit. I issued one of the subpoenas but rejected the other three because they were overly broad. (Tr. 636–37). I also granted Mendez a two-week continuance of trial instead of the two months he requested. Mendez raised this issue on direct appeal and the Second Circuit rejected his argument. *Morales*, 185 F.3d at 85. Moreover, Mendez's counsel at trial provided a competent and well-prepared defense. Appellate counsel appropriately chose not to advance this frivolous argument.

### 4. *Failure to Argue Prosecutorial Misconduct*

Mendez argues that counsel was constitutionally ineffective for failing to argue on appeal prosecutorial misconduct, including prosecutors' alleged hiding of impeachment material from the defendant, failing to provide a witness list, and failing to provide 18 U.S.C. § 3500 material in advance. To merit habeas relief on a claim of prosecutorial misconduct, petitioner must show that the alleged misconduct denied him a fair trial. *Greer v. Miller*,

483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). Mendez must establish that the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quotation and citation omitted).

First, Mendez provides no evidence to support his allegations that the government withheld impeachment evidence. Second, the government is not required to provide the defense with a list of witnesses and § 3500 material prior to trial. *See* Fed.R.Crim.P. 16. District courts may use their discretion to compel pretrial disclosure of the government's witnesses. *See United States v. Cannone*, 528 F.2d 296, 299 (2d Cir.1975). On a pretrial motion, a defendant must make a "specific showing that disclosure was both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." *Id.* at 301. Third, the government did provide Mendez with a witness list and 3500 material in advance of trial. (Tr. 634). The government did not withhold witnesses' identities or attempt to surprise Mendez at trial. Finally, even assuming that witnesses testified who were not originally on the witness list read to potential jurors, as Mendez alleges, he has provided no evidence of any prejudice. Mendez has failed to show that untimely disclosure of additional witnesses materially impacted his counsel's preparation for trial or denied him a fair trial.

For the above reasons, appellate counsel's performance did not fall below an objective standard of reasonable as a result of counsel's failure to make arguments regarding prosecutorial misconduct on appeal.

### 5. *Prejudice*

Finally, Mendez has failed to show that the success of any of the four issues discussed above would have resulted in a different outcome if raised on appeal. Evidence of Mendez's guilt was overwhelming. In affirming his conviction, the Second Circuit noted that "the government presented a strong case," including "eyewitness testimony ... that the defendants shot and robbed [Bryan] Wilson as he was closing up his shop" and "overwhelming evidence in support of defendants' convictions for possessing firearms ... as convicted felons." *Morales*, 185 F.3d at 83. The evidence also included Mendez's videotaped confession. Therefore, Mendez has not satisfied the second prong of the *Strickland* test for ineffective assistance of counsel.

### 6. *Rule 6(a) Motion*

Mendez also submits a Rule 6(a) motion for discovery. Mendez requests discovery to more fully develop his arguments that the government withheld impeachment evidence, thereby preventing him from successfully cross-examining witnesses. Rule 6(a) of the Federal Rules Governing § 2255 Proceedings states that "[a] party shall be entitled to invoke the processes of discovery ... if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Mendez simply cannot meet the good cause requirement set forth in Rule 6(a) of the rules governing § 2255 Proceedings. Accordingly, Mendez's motion for discovery is denied.

### *CONCLUSION*

Mendez has demonstrated no basis for relief under 28 U.S.C. § 2255. Accordingly, the motion is denied. Mendez's Rule 6(a) motion is also denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision and order would not be taken in good faith.

SO ORDERED.