IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 21, 2009

**MICHELLE SHOEMAKER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Jackson County**
**No. 02-160    John D. Wootten, Jr., Judge**

---

**No. M2009-00472-CCA-R3-CD - Filed April 13, 2010**

---

Petitioner, Michelle Shoemaker, was unsuccessful in her direct appeal to this Court from her convictions in Jackson County for first degree murder, conspiracy and tampering with evidence. These convictions resulted in an effective life sentence. *See State v. Michelle Shoemaker*, No. M2005-02652-CCA-R3-CD, 2006 WL 3095446 (Tenn. Crim. App., at Nashville, Nov. 2, 2006), *perm. app. denied*, (Tenn. March 12, 2007). Following her unsuccessful direct appeal, she filed a petition for post-conviction relief alleging that she was afforded ineffective assistance of counsel by both her trial and appellate counsel. After conducting an evidentiary hearing on the post-conviction petition, the post-conviction court denied the petition. Petitioner now appeals the post-conviction court's denial of her petition. After a thorough review of the record, we conclude that Petitioner has been unable to prove that either trial or appellate counsel were ineffective. Therefore, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Rebecca Brady, Cookeville, Tennessee, for the appellant, Michelle Shoemaker..

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Ton P. Thompson, Jr., District Attorney General, and Justin Harris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Petitioner was convicted by a Jackson County jury of first degree murder, conspiracy to commit first degree murder, solicitation for first degree murder and tampering with the evidence in connection with the murder of her stepfather perpetrated by Dean Shoemaker and Robert Foutch. *Michelle Shoemaker*, 2006 WL 3095446, at *1. Petitioner was sentenced to an effective life sentence. The trial court merged her conviction for solicitation of murder into the first degree murder conviction and ordered her twenty-year sentence for conspiracy and three-year sentence for tampering with evidence to be served concurrently with the life sentence. *Id.* Petitioner was unsuccessful on direct appeal to this Court. *Id.* at *11.

Petitioner's convictions arose from the 2002 murder of her stepfather, Jim Kerr. The evidence at trial established that four individuals, Petitioner; Petitioner's mother, Carol Kerr; Petitioner's husband, Dean Shoemaker; and Robert Foutch a/k/a Glen "Frankie" Sanders, who lived with Petitioner and her husband, conspired to kill Mr. Kerr and to share the life insurance proceeds that Mrs. Kerr anticipated she would receive following her husband's death. The evidence demonstrated that the actual killing was perpetrated by Dean Shoemaker and Robert Foutch. *Id*. at *1.

On February 22, 2008, Petitioner filed a pro se petition for post-conviction relief. In this petition she alleged that she had been afforded ineffective assistance of counsel. Counsel was appointed and an amended petition was filed September 2, 2008. The post-conviction court conducted an evidentiary hearing on January 7, 2009. Former Sheriff Kenneth Bean was the first witness at the hearing. He testified that he participated in obtaining a statement from Petitioner. In addition to Sheriff Bean, Tennessee Bureau of Investigation ("TBI") Agent, Russ Winkler, was also present. Agent Winkler did most of the questioning and typing of the statement. Sheriff Bean could not recall whether or not Petitioner had requested an attorney, but he did not think that she had. When asked if Petitioner had been told that in order to see her children again she needed to cooperate with law enforcement, Sheriff Bean denied it. He stated that she might have been told she would get to see her children sooner if she would cooperate. Petitioner had been told that she could leave at any time when they started taking her statement.

The next witness at the hearing was Petitioner's counsel at trial. Trial counsel stated that he and Petitioner discussed whether to ask for a change of venue, but Petitioner did not want to move the trial. Trial counsel stated that he did not believe that the alleged threats on Petitioner's life were that important to her defense. However her leaving her children and running off to Mexico with a boyfriend, as opposed to staying close to her husband who was

set to be a witness at her trial were damaging to her defense. Trial counsel stated that he wanted Petitioner to stay close to her husband because he was slated to testify. Trial counsel was hoping that Petitioner's husband would have some sympathy for her and maybe refuse to testify. Throughout his representation of Petitioner, she maintained that she did not know anything about the planning of the murder. Petitioner maintained that there had been some joking, but she did not know that the murder was really going to occur.

Trial counsel confirmed that the State did make an offer for a plea with a sentence of fifteen years. According to trial counsel, Petitioner did not want to take the offer. Trial counsel said that he would have been very comfortable with her accepting the offer. Petitioner maintained that she was innocent. Trial counsel stated that he was shocked with the amount of information the State turned over during discovery. The State had an open file policy. After a hearing on the motion to suppress had been held, the State turned over a tape recording to trial counsel. In the recording, Petitioner said something like "Mother, they got us; they know about it." Trial counsel immediately presented the recording to Petitioner and told her that they should file a motion for a continuance. Petitioner refused to agree to a continuance. She said that she wanted to have the trial over.

Trial counsel refuted assertions that he had told Petitioner that her case would be "a piece of cake." He did tell her immediately before trial that he and Petitioner should walk into the courtroom with an air of confidence that she was innocent. Trial counsel testified that he went through the evidence with Petitioner and informed her honestly about his thoughts about the case. He visited with her often while she was in jail. While Petitioner was out on bond, she visited his office.

Trial counsel stated that he engaged a second attorney, appellate counsel, to work with him on part of the case so that appellate counsel would be fully prepared to take up the appeal if need be. Trial counsel thought very highly of appellate counsel's appellate skills.

Appellate counsel also testified at the hearing. He began to help about two months before the trial. Appellate counsel did not think a change of venue would have been appropriate. He did not remember much publicity about the case in either newspapers or television. Appellate counsel stated that he chose which issues from the motion for new trial to bring on appeal by relying upon his philosophy that he did not want to focus on issues that would not really change the outcome in light of her life sentence. He wanted to get her first degree murder conviction overturned in order to get a new trial.

Appellate counsel stated that he did not raise an issue concerning the constitutionality of her final statement to law enforcement because it would basically have been Petitioner's word versus Agent Winkler's word. He knew that the argument had not worked in the

-3-

suppression hearing and believed that it would not have worked on appeal. Appellate counsel testified that he went over his appellate strategy with Petitioner. He told her that his intention was to get her conviction overturned. Petitioner did not ask appellate counsel to include more issues, she left it up to his discretion.

Petitioner was the final witness at the hearing. She stated at the outset of her testimony that she did not have any confidence in trial counsel. However, on cross-examination she stated that she did have confidence in him. Petitioner also stated that trial counsel led her to believe that he was confident in the defense strategy. The night before trial, trial and appellate counsel asked her how she was feeling. Petitioner stated that she said she was sure of getting an acquittal. Petitioner also testified that trial counsel told her that the tape recording was not "that big of a deal" and that she should not worry about it.

Petitioner stated that trial counsel presented the fifteen-year offer to her. Petitioner maintained that she considered the offer, but trial counsel told her she should take the case to trial. Petitioner also stated that she wanted the case moved to another venue because the trial was "plastered all over the front page of the newspaper several times." She testified there had been threats on her life and she discussed these with trial and appellate counsel. She told them they could contact her doctor or her daughter's counselor to corroborate the threats. On cross-examination, she admitted that the doctor had heard the information from her. Petitioner complained that she was not allowed to have any input into the motion for new trial or her appeal. She denied that appellate counsel spoke with her in person about the appeal. She stated that he told her on the telephone what the issues would be. According to Petitioner, she asked him if there should be more issues, but he said no.

At the conclusion of the hearing, the post-conviction court denied the petition for post-conviction relief. Petitioner filed a timely notice of appeal.

## ANALYSIS

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

On appeal, Petitioner argues that the post-conviction court erred in denying her petition because counsel was ineffective in that counsel failed to communicate openly and honestly with her and failed to properly investigate and appeal the Constitutionality of her final statement to police. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins*, 911 S.W.2d at 347. This Court may not second-guess a reasonably based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

<u>Ineffective Trial Counsel</u>

With regard to Petitioner's allegations that counsel failed to communicate with her honestly regarding her plea offer and her chances of being convicted, the post-conviction court stated that trial counsel had met with her numerous times both while she was out on bond and in jail; had informed her of the offer from the State; and discussed the evidence with her. We find no evidence that preponderates against the post-conviction court's findings. Basically, the issue comes down to a credibility determination between trial

counsel's testimony at the hearing and Petitioner's testimony at the hearing. It is clear that the post-conviction court found trial counsel's testimony credible. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact," and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn.1996). We find no evidence to preponderate against the findings of the trial court. Therefore, Petitioner has not proven that the services rendered by trial counsel were deficient with regard to this issue.

## Ineffective Appellate Counsel

Petitioner also argues that she was afforded ineffective assistance by appellate counsel. She argues that appellate counsel's failure to raise an issue regarding the trial court's denial of her motion to suppress her statement to police constituted ineffective assistance of counsel. A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel acted objectively unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful before the state's highest court. *See e.g., Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L.Ed.2d 756 (2000); *Aparicio v. Artuz*, 269 F.3d 78, 95 (2nd Cir. 2001); *Mayo v. Henderson*, 13 F.3d 528, 533-34 (2d Cir. 1994). To show that counsel was deficient for failing to raise an issue on direct appeal, the reviewing court must determine the merits of the issue. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L.Ed.2d 305 (1986)). Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. *Id.* Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. *Id.* When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. *Carpenter*, 126 S.W.3d at 888 (citing *United States v. Dixon*, 1 F.3d 1080, 1083 (10th Cir. 1993)). Additionally, ineffectiveness is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal, primarily because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.

Petitioner has failed to include the transcript of the hearing on the motion to suppress in the record. We have also reviewed the record in Petitioner's direct appeal. However, the record on direct appeal does not contain a transcript of the hearing on the motion to suppress. For this reason, we are unable to determine the merits of whether the trial court should not have denied the motion to suppress. As stated above, to prevail on a claim that appellate counsel was ineffective, we must determine the merits of the issue that appellate counsel

failed to present on direct appeal. In this case, we are unable to determine the merits of this issue. Therefore, Petitioner is unable to prove both prongs that appellate counsel acted unreasonably in failing to raise the issue and that Petitioner would have been successful on direct appeal based upon this issue.

Therefore, this issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
JERRY L. SMITH, JUDGE